(No. 15645.—Decree affirmed.)

THE INTERNATIONAL LUMBER COMPANY, Appellant, *vs.*
LOUIS L. EMMERSON, Secretary of State, Appellee.

*Opinion filed April 14, 1924.*

1. CONSTITUTIONAL LAW—*what is not an unjust discrimination
in taxing corporations.* The provision of section 110 of the act in
relation to corporations for pecuniary profit, that a corporation
which fails to file its annual report of property and business in
Illinois shall pay a franchise tax based upon its entire capital stock,
is not an unjust discrimination in favor of corporations which com-
ply with the law and are taxed only on the report of their property
and business in the State.

2. SAME—*State cannot tax property beyond its jurisdiction or
burden interstate commerce.* The State cannot place a burden on
interstate commerce or tax property located beyond the jurisdic-
tion of the State.

3. CORPORATIONS—*State may tax foreign corporations.* The
State may levy a tax measured by the capital stock of a foreign
corporation as represented by its property and business in Illinois
even though its entire authorized capital stock is represented by
such property and business, and such a tax is not a direct burden
upon interstate commerce.

4. SAME—*section 110 of Corporation act as amended in 1921 is
not invalid.* Section 110 of the act in relation to corporations for
pecuniary profit, as amended in 1921, authorizing the levy of a
franchise tax on the entire capital stock of a foreign corporation
which has failed to file its annual report of property and business
in Illinois, does not impose a direct burden upon interstate com-
merce nor tax property beyond the jurisdiction of the State and
is not invalid.

APPEAL from the Circuit Court of Sangamon county;
the Hon. FRANK W. BURTON, Judge, presiding.

WINSTON, STRAWN & SHAW, and LANCASTER, SIMP-
SON, JUNELL & DORSEY, for appellant.

EDWARD J. BRUNDAGE, Attorney General, and CLAR-
ENCE N. BOORD, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, the International Lumber Company, is a corporation organized under the laws of the State of Minnesota, engaged in the business of manufacturing and selling lumber and other forest products for profit. For several years prior to 1922 it had been licensed to do business in this State, and a portion of its authorized capital stock was represented by business transacted and property located in this State. The fiscal year of the corporation was the calendar year, and the appellee, Louis L. Emmerson, Secretary of State, assessed against the corporation a franchise tax for the year beginning July 1, 1922, as directed by section 110 of the act in relation to corporations for pecuniary profit, as follows: Five per cent of each $100 of $4,000,000 authorized capital stock, $2000; additional tax, increase of capital in Illinois, $1170.02; ten per cent penalty on $2000, $200; default fee, $20; five per cent per month penalty from August, 1922, to November, 1922, inclusive, on $2000, $400, aggregating $3790.02. The appellant filed its bill in equity in the circuit court of Sangamon county praying for an injunction restraining the Secretary of State from paying $3657.50 to the State Treasurer, and requiring him to refund that amount to the complainant. A temporary injunction was ordered and the defendant demurred to the bill. The demurrer was overruled, and the defendant electing to stand by it, refused to answer. On the allegations of the bill the chancellor decreed that the sum of $1170.02 (the additional tax on increase of capital in this State) was without authority, but that the franchise tax, with penalty, default fee and interest, was lawfully assessed and collected. The injunction was made perpetual as to the sum of $1170.02 and was dissolved as to the remainder. This appeal was prosecuted from that decree.

The facts alleged in the bill admitted by the demurrer, and upon which the decree was based, are as follows: The

complainant during the year 1921 had property and business at places outside of this State, and at least ninety-two per cent of its business constituted interstate commerce by the shipping of goods from one State to another. But a small part of the total business of cómplainant for that year was transacted from its place of business in this State, and all such business consisted of sales and deliveries outside this State to points in the State. The total authorized capital stock of the complainant was $4,000,000, the total value of all its tangible property on December 31, 1922, was $9,076,668, and the total value of its tangible property in this State on December 31, 1921, was $1103.08. The total business of the complainant during the year 1921 was $1,020,529.35, and its total business for the year 1921 transacted at or from its place of business in this State was $391,775. The complainant did not file any annual report with the defendant prior to June 15, 1922, through oversight, and on November 22, 1922, after the tax was assessed, the complainant tendered to the defendant and offered to file with him its annual report on forms prescribed and furnished by him, and tendered to him $132.52, being $86.56 franchise tax properly payable upon the amount of complainant's business and property in this State, together with the penalty of ten per cent, a default fee of $20, and a penalty upon the amount of the tax at the rate of five per cent per month from August to November, 1922, inclusive. The defendant refused to receive or file the report, and threatened that unless the amount demanded by him was paid he would take steps to prevent complainant from transacting business in this State. The complainant paid the balance, $3657.50, under protest, claiming that section 110 of the Corporation act, as amended in 1921, is unconstitutional and void in providing that if a corporation fails or refuses to file its annual report within the time required by the act the Secretary of State shall assess a franchise

tax against the corporation, based upon its entire authorized capital stock.

It is admitted in the argument that the sum of $132.52 tendered to the defendant was insufficient, and that under sections 105 and 107 of the act in relation to corporations for pecuniary profit the minimum tax, penalty and default fee would have been $280, and the controversy in this court is concerning·the excess above that amount, paid under protest.

The statute requires each corporation for profit admitted to do business in this State to pay an annual franchise tax on the proportion of its capital stock authorized by its charter, represented by business transacted and property located in this State, and counsel are agreed that the amount so required to be paid is a tax and not a penalty. It is therefore urged that the tax authorized by section 110 and assessed against the complainant is obnoxious to section 1 of article 9 of the constitution, which requires that franchise taxes shall be uniform as to the class upon which they operate. The statute requires each corporation, with the exceptions stated in the act, to make a report in writing to the Secretary of State between the first day of February and the first day of March of each year, on prescribed forms furnished by the Secretary of State, who is required, on or before the 15th day of January of each year, to forward to each corporation a copy of the forms to be used in making the report. Section 110 provides that if any corporation fails or refuses to file its annual report within the time required by the act the Secretary of State shall assess a franchise tax against such corporation based upon its entire authorized capital stock, but if a corporation shall file its annual report in the office of the Secretary of State before the 15th day of June of the year in which it is due the Secretary of State shall make an adjustment of the franchise tax as in other cases, but the filing of such report shall not relieve the corporation of the payment of

any penalty required by the act, but in such case the penalty of ten per cent shall be based upon the franchise tax as adjusted. The case stated by counsel as demonstrating the want of uniformity between corporations of the same class is that of two corporations having the same amount of property and the same volume of business in this State, and one complies with the law by making a report, upon which a tax is assessed, and the other fails or refuses to make its report, resulting in an increased tax and an entire want of uniformity between the two corporations of the same class. The law applies equally to every corporation and all are treated exactly alike, but for the purpose of determining the amount of the capital stock represented by business transacted and property located in this State the act provides different methods. If two corporations complied with the law by filing annual reports, the proportion of the property and business of each in this State would be determined from such reports, but if one should fail or refuse to furnish the report from which the amount of business in this State is to be determined it could not be regarded in the same class as the one obeying the law. The mere fact that corporations failing or refusing to furnish the required information may pay a larger amount of tax in proportion to their property and business in this State than corporations complying with the law does not make the law not uniform as to the corporations upon which it operates.

It is also contended that the tax in this case places a prohibited burden on interstate commerce, imposes a burden on property of a foreign corporation located beyond the jurisdiction of the State, and violates the due process of law and equal protection of law clauses of the fourteenth amendment. There is no dispute of the propositions that the State cannot place a burden on interstate commerce or tax property located beyond the jurisdiction of the State and that a law of that character is unconstitutional and

void. This court decided in *Missouri Pacific Railroad Co.*
v. *Public Utilities Com.* 292 Ill. 427, that section 31 of the
Public Utilities act, by which the commission made a charge
against the Missouri Pacific Railroad Company for a cer-
tificate authorizing the issue of mortgage bonds secured by
a mortgage on its entire system, was void because it im-
posed a burden on interstate commerce. In *Pullman Co.* v.
*Kansas,* 216 U. S. 56, it was held that the Pullman Com-
pany could not be restrained from doing local business in
Kansas because of the refusal to pay a charter fee of a
given per cent of its entire capital stock, and that such re-
quirement amounted to a burden or tax on the company's
interstate business and on its property located and used out-
side the State. In *Looney* v. *Crane Co.* 245 U. S. 178, a
requirement of the State of Texas for the admission of the
Crane Company, a corporation of this State, to do busi-
ness in that State that it should pay a tax based on the
amount of its authorized capital stock and a franchise tax
based upon capital, surplus and undivided profits, was held
to be beyond the authority of the State, as taxing property
and rights wholly beyond the confines of the State, not sub-
ject to its jurisdiction, and therefore constituting a taking
without due process of law. It was also decided that the
imposition of such a tax was an unlawful burden on inter-
state commerce. In *International Paper Co.* v. *Massachu-
setts,* 246 U. S. 135, it was again decided that the imposi-
tion of a State excise tax assessed in Massachusetts against
a New York corporation as a condition of admitting the
corporation engaged in both local and interstate commerce
within the State, based upon the amount of its authorized
capital stock, without limitation of the amount of the tax,
constituted an unlawful burden on interstate commerce. It
was also again held that the statute imposing the tax as a
condition of admitting the foreign corporation to do busi-
ness in the State, based upon the amount of the authorized
capital stock, without any limitation, was an attempt to ex-

ercise the taxing authority of the State over property located beyond its jurisdiction, and therefore constituted a taking without due process of law.

In the cases cited the law provided no method by which a tax could be based upon that proportion of the capital stock represented by the property and business of the corporation in the State, and there was no provision for having a tax assessed or computed in any other manner. The statute of this State does not come within the condemnation of any of those cases, but only provides for assessing a tax upon the proportion of the capital stock represented by property and business in this State and methods of ascertaining the same. In *American Can Co.* v. *Emmerson,* 288 Ill. 289, the appellant was a foreign corporation organized under the laws of New Jersey, and it filed a bill to enjoin the Secretary of State from paying over to the State Treasurer a tax collected which was based on an assessment of that proportion of the authorized capital stock represented by tangible business in this State. The court said that by the statute the foreign corporation was accorded the same treatment and subjected to the same tax as domestic corporations and there was no discrimination against foreign corporations, and that while this State might not regulate interstate commerce or impose burdens thereon, it is authorized to levy a tax measured by the capital stock of a foreign corporation so far as represented by its property and business in this State. In *Hump Hairpin Manf. Co.* v. *Emmerson,* 293 Ill. 387, the entire capital stock of the West Virginia corporation was represented by business transacted and property located in this State, and the decision was that the tax based on such capital stock was not a tax on interstate commerce. The judgment of this court was affirmed in *Hump Hairpin Manf. Co.* v. *Emmerson,* 258 U. S. 290, where it was held that while the State may not use its taxing power to regulate or burden interstate commerce, a tax which affects such commerce not directly but only incident-

ally and remotely may be entirely valid, and that the tax in that case, based on the entire authorized capital stock represented by the property located and business transacted in this State, was not a violation of any constitutional right.

The act in relation to corporations does not authorize a franchise tax upon the total authorized capital stock of a foreign corporation without limitation, but only on the proportion thereof represented by property and business transacted in this State, and the only questions are whether, if a corporation does not comply with the law and furnish the evidence upon which the assessment can be made and the tax computed, the Secretary of State may lawfully take the authorized capital stock as representing the amount of property and business transacted in this State, and whether a court of equity will intervene to relieve a corporation from its neglect or refusal to comply with the law upon its making proof, as proposed in this case by the bill, that the tax was in excess of the property and business transacted in this State. The complainant by its bill took the position that it could disregard the law by not making its report either when required by the statute or before June 15, 1922, and require the defendant to ascertain the proportion of its capital stock represented by business in this State as best he could, and any excess of tax above the proportion of such property in this State would be void. The argument is that section 110 as amended in 1921 being unconstitutional and void, that section as it existed before the amendment is in force and provides the method for assessing the tax. The section before the amendment provided that if any corporation failed or refused to file its annual report the Secretary of State should assess a franchise tax against the corporation based upon the best possible available information. That method was plainly and clearly inadequate. In the case of the complainant it would require investigation of the business of the complainant in other States, and was unreasonable and impracticable. In general it would

require a personal investigation in other States of figures available only to the corporation itself, at an expense, if the facts could be ascertained, beyond the total amount of the tax. The legislature had a right to establish a standard for ascertaining the amount of the proportion of the authorized capital stock represented by property and business in this State, and to establish such a standard by providing that a corporation shall make a report which will enable the Secretary of State to adjust the tax, of which the complainant was bound to take notice. It made no report, as alleged, through oversight, within the time required by the statute and not until November 22, 1922, when the tax had been levied and was in process of collection.

The decree is affirmed. *Decree affirmed.*