(No. 34667.— )

UNITED STATES BORAX & CHEMICAL CORPORATION, Appellee, *vs.* CHARLES F. CARPENTIER, Secretary of State, *et al.,* Appellants.

*Opinion filed May 21, 1958—Rehearing denied June 18, 1958.*

112

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, THEODORE G. MAHERAS, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellants.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (MONTGOMERY S. WINNING, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Complaint was filed in the circuit court of Sangamon County by the United States Borax & Chemical Corporation, hereinafter called plaintiff, against Charles F. Carpentier, Secretary of State, and Warren Wright, Treasurer of the State of Illinois, defendants, for an injunction restraining the transfer of $52,903.31 into the State treasury of the State of Illinois. Said sum had been paid as franchise taxes and license fees under protest by the plaintiff to avoid the penalties imposed by the Business Corporation Act. Defendants filed a motion to strike the complaint and the amendments thereto. The cause was heard upon the motion, which was denied. The public revenue and certain constitutional questions being involved, the appeal is taken directly to this court.

Plaintiff is a corporation existing under and by virtue of the laws of the State of Nevada, having its principal place of business in the city of Los Angeles, county of Los Angeles, State of California, and admitted and authorized to transact business in the State of Illinois since July 29, 1937. The corporation is engaged in the mining, refining and marketing of borate ores, borate products, potassium salts, and other chemicals and related products. Its primary business activity within this State is the marketing of said minerals and products. It first qualified to do business in the State under the name and style of The Pacific Coast Borax Company, and was and remains, on the records of the Secretary of State of Illinois, in good standing. Plaintiff had established September 30 as the end of its fiscal year. On September 30, 1955, the plaintiff owned one piece of improved real estate in Illinois which it leased to a tenant for rentals. This property and the accounts receivable derived from its business were all the property owned by the plaintiff at that time in this State. The stated capital of the corporation then was $99,700 and the paid-in surplus was $20,310. The total value of plaintiff's property everywhere on that date was $128,921.30 of which $120,000 thereof was located in this State. The total amount of business transacted by plaintiff during that fiscal year prior to September 30, 1955, was $10,200, and was all in Illinois.

In February, 1956, in accordance with the Business Corporation Act of the State of Illinois, plaintiff filed its annual report and therein elected to pay its franchise tax for the year beginning July 1, 1956, upon its entire stated capital and paid-in surplus. The tax amounted to $60.01. The plaintiff paid that tax to defendants on June 22, 1956.

It is agreed between the parties that if plaintiff had elected to pay this franchise tax on the basis of the property located within and its business transacted at or from places of business within the State of Illinois, in accordance with the formula established in the Business Corporation Act

(Ill. Rev. Stat. 1955, chap. 32, par. 157.139,) for determining the annual franchise tax (the proportion of the sum of its stated capital and paid-in surplus represented in this State, being the ratio which the sum of the value of its property in this State and the business transacted at or from places in this State bears to the sum of all of its property and all of its business wherever transacted, which ratio would be 93.57 percent,) the franchise tax under that formula would have been $56.17.

On May 28, 1956, plaintiff increased its stated capital and paid-in surplus by $31,990. The license fee and franchise taxes assessed in respect to this increase were duly paid without objection.

It is further agreed by the parties hereto that on May 31, 1956, June 4, 1956, and June 6, 1956, by the issuance of stock and otherwise, plaintiff increased its stated capital and paid-in surplus by an amount aggregating more than $49,000,000. By these transactions plaintiff acquired substantially all of the property of Consolidated Borax Company, Incorporated, almost all of which was located outside of the State of Illinois. Subsequent to these transactions only about two percent of plaintiff's property and business was located in or transacted in, at, or from places within the State of Illinois.

As of July 2, 1956, the United States Potash Company, a corporation organized and existing under and by virtue of the laws of the State of New Mexico, but not admitted to do nor doing any business in the State of Illinois, was merged with and into the Pacific Coast Borax Company, the latter thereupon becoming the surviving constituent corporation and its name was changed to United States Borax & Chemical Corporation, the plaintiff herein. As a result of this merger the stated capital and paid-in surplus was increased by more than $4,000,000 which was represented by property located and business transacted outside of the State of Illinois.

On July 30, 1956, these changes in the stated capital and paid-in surplus of plaintiff were reported to the Secretary of State of Illinois by the filing of (a) a report of issuance of shares and increases in stated capital and paid-in surplus reporting the increase in shares issued May 28, 1956, (b) a report of issuance of shares and increases in stated capital and paid-in surplus reporting the increase in plaintiff's property as a result of the issuance of new shares on May 31, 1956, and June 4, 1956, (c) a report of change in stated capital and paid-in surplus of a foreign corporation under section 119 of the Business Corporation Act, reporting the merger of Pacific Coast Borax Company and United States Potash Company into United States Borax & Chemical Corporation, the receipt of new property and the obligation to issue new shares on July 2, 1956, (d) an application for amended certificate of authority of a foreign corporation, (e) certified copy of agreement of merger, and (f) an amended annual report. The defendant Secretary of State refused to receive or file said amended report for the reason that it was filed after the last date for filing of amended reports: June 25, 1956, or before payment of annual taxes and fees. On July 30, concurrent with the filing of reports and after tendering the amended annual report, plaintiff submitted to the Secretary of State its computation of license fees, franchise taxes, filing fees and penalties due from the plaintiff, on that portion of the increase in its stated capital and paid-in surplus appearing on May 31, June 4, and June 6, 1956, as computed under the apportionment formula set forth in sections 136 and 139 of the Business Corporation Act. According to the computation by plaintiff in respect to the corporate changes during the months of May, June, and July, 1956, the additional license fees and franchise taxes due from plaintiff would have totalled the sum of $1,085.34. The Secretary of State refused this offer and instead computed the license fees and franchise taxes additionally due to the State of

Illinois on the entire increase in the stated capital and paid-in surplus arising by virtue of these corporate changes. The Secretary based his computation upon the fact that the plaintiff, in filing its annual report in February, 1956, had elected to pay its annual franchise tax on its entire stated capital and paid-in surplus and had filed no amended annual report before June 25, 1956, or the payment of annual fees and taxes, the statutory deadlines. Based upon this method the amount computed by the Secretary of State totalled $53,927.62. In order to avoid penalties and in order to continue business within the State of Illinois, plaintiff paid the sum computed by the Secretary of State, but paid $52,903.31 of that sum under protest. On August 27, 1956, plaintiff filed its complaint for injunction in the circuit court of Sangamon County, praying that the Treasurer of the State of Illinois be enjoined from transferring the protested sum into the State treasury of the State of Illinois and that the assessment of franchise taxes and additional license fees against the plaintiff, in excess of the sum paid without objection by plaintiff, be held to be unconstitutional and void and in violation of the constitution of the United States and the constitution of the State of Illinois, and that the protested sum be directed to be refunded to plaintiff. Temporary injunction against transfer of the protested sum from the protest fund to the State treasury was entered on August 28, 1956. On September 26, 1956, defendants filed their motion to strike, stating that plaintiff elected in its annual report, February 27, 1956, to pay its franchise tax on the sum of its entire stated capital and paid-in surplus and that plaintiff failed to amend or alter its annual report in any manner or make any different election, provided by the Business Corporation Act, before June 25, 1956, the statutory deadline for amendment, but waited until after July 30, 1956, to present an amended annual report. Plaintiff thereafter filed certain amendments and supplemental complaints. The cause came

on for hearing on the motion to strike, thereupon the court found the equities to be with plaintiff and ordered the Treasurer of the State of Illinois to pay over to the plaintiff the sum of $52,670.68 then held by him in the protest fund. The defendants appeal directly to this court. The corporation insists that a franchise tax when measured by property located and business transacted outside of the State violates the due process and the protection clauses of the fourteenth amendment to the Federal constitution, the commerce clause of the Federal constitution and the due process clause of the State constitution. The State insists that such taxes, imposed herein, were lawful and proper, as the plaintiff elected in its annual report to so pay its franchise taxes, it failed to amend during the time provided by statute, it failed to merge prior to the issuance of new shares and increased stated capital, the election by plaintiff constituted a waiver of any protection afforded by the interstate commerce clause, and the plaintiff is estopped by its election to attack the validity of the franchise taxes and license fees imposed. In answer the plaintiff stated that no avenue was provided by the Business Corporation Act whereby it could have had the amount of its license fees and franchise taxes on increases in stated capital and paid-in surplus computed on the apportionment theory, according to the construction of the Secretary of State, and hence it could not have waived its right to challenge the excessive assessment; and that it was entitled in respect to such increases to have the apportionment formulas applied to the facts as they existed when said increases were made.

The franchise tax imposed by this State upon foreign corporations is a tax upon the privilege of transacting business within this State. This State cannot constitutionally compel a foreign corporation to submit to a tax levied or measured wholly or partially by property located and business transacted outside of the State, inasmuch as such tax would be an interference with interstate commerce.

(*St. Louis Southwestern Railway Co.* v. *Stratton,* 353 Ill. 273; *O'Gara Coal Co.* v. *Emmerson,* 326 Ill. 18; *Western Union Telegraph Co.* v. *Kansas,* 216 U.S. 1, 54 L. ed. 355; *International Paper Co.* v. *Massachusetts,* 246 U.S. 135, 62 L. ed. 624; *Connecticut General Life Ins. Co.* v. *Johnson,* 303 U.S. 77, 82 L. ed. 673.) Such an imposition of tax violates the due process and equal protection clauses of the fourteenth amendment of the Federal constitution and the due process clause of the Illinois constitution.

It is necessary for us to determine, under the undisputed facts in this case, just what method applies or under what provisions of the Business Corporation Act is the addition franchise tax payable by plaintiff in this case to be computed. Section 115 of the Business Corporation Act provides that foreign corporations authorized to do business in this State shall file an annual report expressing the value of all the property owned by the corporation in dollars, the value of the property located within this State, and a statement of the gross amount of businesss transacted by the corporation for the 12 months ending on the 31st day of December preceding the date of the filing of such report and the gross amount thereof transacted by or from places of business in this State. The information and the report shall be given as of the close of business on December 31 next preceding the date of filing or if the corporation keeps its accounts on a fiscal year basis then as of the close of its fiscal year next preceding such 31st day of December.

Section 117 of the act provides that a foreign corporation authorized to transact business in Illinois shall file a report of the issuance of any shares, not previously reported, within 60 days after the issuance thereof, together with the statement of the value of the entire consideration received. Section 138 requires that each such foreign corporation shall pay to the Secretary of State an additional franchise tax on the basis and at the rates prescribed in the

act at the time of filing the report of the issuance of additional shares whenever such report discloses an increase in the sum of its stated capital and paid-in surplus over the sum last reported in any document other than an annual report.

It is further provided in section 139 that the basis for additional franchise taxes payable by such corporation, except in the case of a statutory merger, should be the increased amount represented in this State, determined in accordance with the provisions of the section. The amount represented in this State of the sum of stated capital and paid-in surplus of such corporation shall be determined in the manner provided in the act with respect to license fees for foreign corporations except "(a) If the corporation elects in its annual report in any year to pay its franchise tax upon the sum of its entire stated capital and paid-in surplus, all franchise taxes accruing against the corporation after the filing of said annual report shall be assessed accordingly, until the corporation elects otherwise (1) in a subsequent annual report filed on or before June 25th of said year and before payment of its annual franchise tax, or, (2) in an annual report for a subsequent year." Whenever such foreign corporation shall be party to and the surviving corporation of a statutory merger, the basis for an additional franchise tax shall be the increased amount represented in this State of the sum of the stated capital and paid-in surplus of the surviving corporation immediately after the merger over the aggregate of the amount represented in this State of the stated capital and paid-in surplus of such of the merged corporations as were authorized to transact business in this State at the time of the merger.

An examination of the Business Corporation Act discloses that section 136 provides for the determination of license fees and is the section which is referred to in section 139. It is provided by section 136 that the basis for an additional license fee payable by a foreign corporation,

except in the case of a merger, shall be the increased amount represented in this State of the sum of its stated capital and paid-in surplus. Whenever a foreign corporation shall be a party to a statutory merger and be the surviving corporation, the basis for an additional license fee shall be the increased amount represented in this State of the sum of the stated capital and paid-in surplus of the surviving corporation immediately after the merger over the aggregate of the amounts represented in this State of the stated capital and paid-in surplus of such of the merged corporation as were authorized to transact business in this State at the time of the merger. "For the purpose of determining the amount represented in this State of the sum of the stated capital and paid-in surplus of a foreign corporation, the amount represented in this State shall be that proportion of the sum of its stated capital and paid-in surplus which the sum of (1) the value of its property located in this State and (2) the gross amount of business transacted by it at or from places of business in this State bears to the sum of (1) the value of all of its property, wherever located, and (2) the gross amount of its business, wherever transacted." The proportion represented in this State of the sum of the stated capital and paid-in surplus of such corporation shall be determined from the latest annual report of the corporation "on file on the date the particular increase in stated capital and paid-in surplus is shown to have been made." Ill. Rev. Stat. 1955, chap. 32, par. 157.136.

Where the circumstances of the imposition of a franchise tax are such as to indicate no purpose or necessary effect in the tax imposed to burden interstate commerce, or where the tax affects interstate commerce only incidentally or remotely the tax is not invalid nor unconstitutional as a burden upon interstate commerce. *Illinois Iron and Bolt Co. v. Emmerson,* 333 Ill. 351.

By the General Corporation Act of 1919 the Illinois statutes required each corporation for profit authorized to

do business in this State to pay an annual franchise tax on the proportion of its capital stock authorized by its charter represented by business transacted and property located in this State. Each corporation was required to make a report in writing to the Secretary of State setting forth such information as to its total business and its business within the State of Illinois and its total property and property located within the State of Illinois to enable the Secretary of State to assess a franchise tax in accordance with the statute. It was further provided that if any corporation failed or refused to file such annual report within the time specified, the Secretary of State was directed by statute to assess a franchise tax against such corporation based upon its entire authorized capital stock. This act was attacked as unconstitutional and invalid. (*International Lumber Co. v. Emmerson,* 311 Ill. 564.) It was held, in the case cited, that such a tax, imposed upon the corporation and based upon its entire authorized capital stock, did not impose a burden upon the property of a foreign corporation located beyond the boundaries of Illinois or violate the due process or equal protection clauses of the Federal constitution, for the reason that the corporation had the choice and election of providing the necessary information to enable the State to assess its franchise tax upon its capital stock in proportion to the business it transacted and its property located within Illinois, or to fail to provide the information and be assessed upon its entire authorized capital stock. This court there said that the legislature had a right to establish a standard for ascertaining the amount of the proportion of authorized capital stock represented by property and business in this State, and to establish such a standard by providing that a corporation shall make a report, and to otherwise impose a tax upon the entire authorized stock when the report was not filed.

That case clearly indicates that, (although a tax imposed upon authorized capital stock has subsequently been

questioned as a tax upon property not in existence where all of the authorized stock was not issued,) where such an election is provided a tax imposed upon all of the property of the corporation, whether within or without Illinois or represented by business transactions within or without Illinois, is legal, where the corporation fails or elects not to provide the State with such information as to permit the State to affix or assess a franchise tax based upon a proportion fixed by the business transacted at, in or from Illinois and the property of the corporation located within Illinois.

This election or alternative provision thus avoids the unconstitutional or invalid aspects encountered when a franchise tax is imposed upon all property and business of a corporation whether represented by assets and business within Illinois or not. The difference is the election or alternative provision. This is most similar to the situation arising in this case under our present Business Corporation Act.

It is not, *per se,* unconstitutional to include some out-of-State property or business in affixing the Illinois tax and fees. So long as the formula used to determine the tax basis is for the purpose of arriving at a fair conclusion as to the value of intrastate business of a corporation authorized to do business in the State it does not violate due process or the commerce clause when it includes certain out-of-State transactions as they relate to the intrastate privilege. (*International Harvester Co.* v. *Evatt,* 329 U.S. 416, 91 L. ed. 390.) This opinion approved an Ohio case wherein the Ohio Supreme Court held that by the failure of the corporation to make plain in its annual report that due to a change in its fiscal year it only operated and reported for and during $\frac{5}{6}$ of the year, it had waived its right to pay tax at only $\frac{5}{6}$ of the annual fee and had thus elected to pay the fee for the full year. *International Harvester Co.* v. *Evatt,* 146 Ohio St. 58, 64 N.E.2d 53.

It is clear from an examination of our statute that our Business Corporation Act provides for an election on the part of the corporation as to the method to be followed in computing, assessing and levying its annual franchise tax and license fee and its additional franchise taxes, if any. Section 139 provides that if the corporation *elects* in its annual report in any year to pay its franchise tax upon the sum of its entire stated capital and paid-in surplus, all franchise taxes accruing after the filing of said annual report shall be assessed accordingly, until the corporation *elects* otherwise in a subsequent annual report filed on or before June 25 of said year and before payment of its annual franchise tax. The proportionate method of assessing the annual or additional franchise taxes and fees conforms with constitutional standards, and the alternate assessment based upon entire stated capital and paid-in surplus is applied only on corporate election. It is clear in this case that the additional franchise taxes must be computed by the same method as the annual franchise tax, as elected by the corporation.

Section 139 recognizes that the annual report may be amended by subsequent annual reports filed on or before June 25 of each year and before the payment of the annual franchise tax. Thus, at any time before payment of the annual franchise tax, which occurred in this case on June 22, 1956, the plaintiff could have amended its annual report and chosen a different *method* of assessing or levying its annual franchise tax and license fee, and thus also the method of assessing its additional taxes and fees. The plaintiff corporation, under the Illinois statutes, enjoys the election of disclosing its business transactions and the amount of its capital located in Illinois, or withholding such information from the public and paying its fees and taxes upon its entire stated capital and paid-in surplus.

The plaintiff argues, however, that even had it chosen in its annual report or a supplemental annual report to

have paid its taxes in accordance with the proportionate method, the construction accorded the Business Corporation Act by the Secretary would only have allowed it to have taken the proportion of 93.587 percent which was the proportionate share of business and property of the corporation located within or transacted in or from Illinois as of December 31, 1955, or at the end of its fiscal year on September 30, 1955. However, the corporation made no attempt to obtain even this benefit. It waited until long after the statutory deadline, fixed by section 139, to present its amended annual report. The Secretary of State had no knowledge of the May and June increases in capital stock and paid-in surplus, or the July 2 merger until July 30. This was long after the election in the February annual report had been confirmed by assessment and payment of the annual tax.

Moreover, this question is purely speculative, as the corporation did not, within the statutory limitations attempt to proceed for proportionate assessment of the fees and taxes. The issue is thus not presented by the facts of this case.

It is clear from the case of *Jewel Tea Co.* v. *Rowe*, 414 Ill. 495, that the basis for additional franchise taxes is to be determined from such additional reports as are required by the Business Corporation Act. These reports determine the basis—the original or subsequent annual report determines the method—and the computation upon a proportionate method can be made only from the annual report (when one has been filed) on file on the date of the increase, as specified by section 136. It is clear, therefore, that plaintiff by failing to file a subsequent or amended annual report before the payment of its annual franchise tax, and by failing to merge prior to the issuance of additional stock, or to delay the issuance until after the merger, failed to take advantage of such benefits as it may have enjoyed by choosing the proportionate method of assess-

ment of additional franchise taxes and the amended annual franchise tax, and hence waived such right. The annual report, original or amended, fixes the method, and also the proportion, except that the proportion may be varied by the fact of merger. Merger prior to the increase of stated capital and paid-in surplus permits a change of proportion upon which the taxes and fees are assessed.

Plaintiff thus had several free choices given by statute, any one of which would have avoided the tax of which it now complains. The rights here involved, not being inalienable constitutional rights, may be waived like other such constitutional rights. *People* v. *Adams,* 4 Ill.2d 453; *People* v. *Preston,* 341 Ill. 407.

The Business Corporation Act of this State, as it relates to the assessment and levy of additional franchise taxes and license fees upon increase in stated capital and paid-in surplus, by issuance of stock or by mere increase in either or both without issuance of shares or the exchange or reclassification of shares, or by merger, is not unconstitutional in any of the respects asserted by plaintiff, for the reason that it provides an election to the plaintiff. This election may be advantageous to the foreign corporation authorized to do business in Illinois. By failing to disclose the amount of its business transacted in or property located within this State it may validly have a tax assessed upon its entire stated capital and paid-in surplus. Our act further provides methods whereby, within a reasonable time limitation, the plaintiff and all corporations have the privilege of amending an annual report changing the method elected by it for assessing and levying such taxes and fees. Moreover an avenue was available to plaintiff to vary the proportion upon which such additional taxes and fees would be assessed. Plaintiff waived its right to have its taxes and fees assessed by the proportionate method by its failure to file an amended annual report. It failed in addition to establish a new method or proportion for assessment of

additional taxes and fees by failing to effect its merger prior to increasing its stated capital and paid-in surplus by issuance of additional shares, or to effect such issuances after the merger. Had it reversed its procedure of increasing stated capital and paid-in- surplus and its merger, plaintiff could have obtained the result requested here. It made its voluntary election, stood by and confirmed it, and neglected or refused to take any step afforded by our statute until too late to better its position.

Consequently the complaint filed by the plaintiff in this cause failed to state a cause of action and the motion to strike should have been allowed. The judgment of the circuit court of Sangamon County is therefore reversed, and the cause is remanded to the circuit court of Sangamon County, with directions to enter an order sustaining the motion to strike and dismiss the complaint filed therein.

*Reversed and remanded, with directions.*