ITT ABRASIVE PRODUCTS COMPANY, Plaintiff-Appellee, *v.* JOHN W. LEWIS, Secretary of State, Defendant-Appellant.

(No. 56894;

First District (5th Division)—May 18, 1973.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Samuel E. Hirsch, Assistant Attorneys General, of counsel,) for appellant.

John A. McElligott, of Chicago, (Henry J. McDonald, of counsel,) for appellee.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Defendant appeals from a judgment granting plaintiff's prayer that it be permitted to pay its 1967 Illinois franchise taxes and license fees on the basis of what is commonly referred to as the "in state-out of state" apportionment formula. Defendant contends that plaintiff was under obligation to pay such taxes and fees on the basis of its entire stated capital and paid-in surplus.[1]

The facts were stipulated to by the parties and in relevant part are as follows:

> 1. Prior to December 31, 1966, Plaintiff, ITT ABRASIVE PRODUCTS COMPANY, a Corporation of Michigan, hereinafter referred to as 'ABRASIVE' was known as STERLING GRINDING WHEEL COMPANY, a Michigan Corporation, hereinafter referred to as 'STERLING'. Its stated capital was $50,000 and it had no paid-in surplus.

---

[1] The relevant statutory provisions are sections 136 and 139 of the Business Corporation Act (Ill. Rev. Stat. 1967, ch. 32, pars. 157.136 and 157.139), which in part provide that a foreign corporation will have its franchise taxes and license fees computed on an "in state-out of state" apportionment formula unless, as section 139 provides:

> "(a) If the corporation elects in its annual report in any year to pay its franchise tax upon the sum of its entire stated capital and paid-in surplus, all franchise taxes accruing against the corporation after the filing of said annual report shall be assessed acordingly, until the corporation elects otherwise (1) in a subsequent annual report filed on or before June 25 of said year and before payment of its annual franchise tax or supplemental annual franchise tax,   *   *   * ."

An amendment to an annual report filed after June 25 which seeks to change the basis of computing said taxes and fees is not effective. *U.S. Borax Corp. v. Carpentier*, 14 Ill.2d 111, 150 N.E.2d 818.

2. Also prior to December 31, 1966, THE PENINSULAR GRINDING WHEEL COMPANY, a Corporation of Michigan, hereinafter referred to as 'PENINSULAR' had a stated capital of $25,000 with no paid-in surplus.

3. For the years through December 1966, both these corporations filed annual reports and paid the minimum Franchise Tax under the Illinois Business Corporation Act based upon the election of the respective corporations to pay such Tax based on their entire stated capital and paid-in surplus.

4. Pursuant to an agreement of merger dated December 15, 1966, effective December 31, 1966, entered into between STERLING and PENINSULAR, PENINSULAR was merged into STERLING and the stated capital of STERLING, whose name was changed by the agreement of merger to ITT ABRASIVE PRODUCTS COMPANY, remained at $50,000.

5. PENINSULAR was later dissolved as a corporation in the State of Michigan and was withdrawn from doing business in the State of Illinois, and proper notification was given the defendant herein.

6. The records of the defendant disclose that it received on February 28, 1967, an Annual Report ( * * * ABRASIVE's Exhibit 3) in the name of STERLING which set forth a stated capital of $50,000 and no paid-in surplus. In this Annual Report ABRASIVE elected to be taxed on its entire stated capital of $50,000 and no paid-in surplus. The records of ABRASIVE disclose that another Annual Report ( * * * ABRASIVE's Exhibit 4) was ostensibly mailed on February 21, 1967, to the defendant. The records of defendant do not reflect the receipt of Exhibit 4 in which ABRASIVE elected to be taxed on an 'in state out of state' basis, the alternative method.

* * *

11. On June 24, 1968, ABRASIVE executed and forwarded to Defendant its Supplemental Annual Report for the year 1968, * * * setting forth a stated capital of $50,000 and paid-in surplus of $4,547,460 for a total of $4,597,460, and in said report elected to be taxed on the 'in state out of state' basis."

Based upon the facts set forth in paragraph 6 above, the trial court concluded that there was a presumption that plaintiff's other annual report (Abrasive's Exhibit 4) requesting taxation on the basis of the apportionment formula had been received by defendant and that this presumption had not been rebutted by the fact that defendant's records failed to show that said report was received. The court, as noted, then

ordered that plaintiff be permitted to pay its taxes and fees based upon said apportionment formula. Defendant contests the aforesaid conclusion.

*Opinion*

The rule of law relied upon by the trial court is set forth in *Talmage v. Union Central Life Insurance Co.*, 315 Ill. App. 623, 639, 640, 43 N.E.2d 575, wherein the court stated:

> "The rule is that proof of the due mailing of a letter raises the presumption of its receipt, and when the receipt thereof is denied, the only effect is to raise an issue of fact."

See *Loving v. Allstate Insurance Co.*, 17 Ill.App.2d 230, 149 N.E.2d 641; *Werdell v. Turzynski*, 128 Ill.App.2d 139, 262 N.E.2d 833.

■■ But in order to invoke the cited presumption there must be proof that the letter, or report here (Abrasive's Exhibit 4), was duly mailed. In this case the only proof to this effect was the statement set forth in Paragraph 6 of the stipulation of facts that the records of plaintiff "disclose that another Annual Report [Abrasive's Exhibit 4]  *  *  *  was *ostensibly* mailed on February 21, 1967, to the defendant." (Our emphasis.)

■■ In construing the terms of a stipulation, as in construing the terms of a contract, the main objective of the court is to determine the intention of the parties. *Pearce v. Walker*, 229 Ill. App. 133. Each word must be given its ordinary meaning. *State Toll Highway Com. v. Boyle & Co.*, 38 Ill.App.2d 38, 186 N.E.2d 390.

The use of the word "ostensibly" in the stipulation is of significance here. It is defined in Webster's Third New International Dictionary (unabridged 1964 ed.), p. 1597, as:

> "1a: capable of being shown:  *  *  *.  2: professing genuineness and sincerity but often concealing the real aspects behind a plausible facade  *  *  *."

In the context of the law of partnership and agency "ostensible" takes on the following meanings (Black's Law Dictionary (4th ed. 1968), p. 1252):

> "OSTENSIBLE AGENCY. An implied or presumptive agency, which exists where one,  *  *  *, induces another to believe that a third person is his agent, though he never in fact employed him.  *  *  *.
>
> OSTENSIBLE PARTNER. One whose name appears to the world as such, though he have no interest in the firm.  *  *  *."

■■ Based on the foregoing definitions, it is evident that the parties did not stipulate that Abrasive's Exhibit 4 (the other annual report) had in fact been duly mailed, but only that plaintiff's records showed that said report was "capable of being shown" to have been mailed, or

"presumably" mailed. If the parties had intended to stipulate that the report was in fact mailed, they could have simply deleted the word "ostensibly" from the stipulation.

Thus, the fact which the court relied upon (due mailing) to invoke the presumption was not in evidence. Under these circumstances it was error for it to have concluded that Abrasive's Exhibit 4 had been received by defendant. See *People v. Roy,* 206 Ill.App. 406; *Meyer v. Krug,* 298 Ill. App. 625, 19 N.E.2d Ill. (abst.); *State Bank of East Moline v. Standaert,* 335 Ill. App. 519, 82 N.E.2d 393. *Roy* at page 412 referred to this as basing a presumption on a presumption. Therefore, the only report which may be deemed to have been filed by plaintiff in 1967 is the annual report, Abrasive's Exhibit 3, in which it requested to be taxed on the basis of its entire stated capital and paid-in surplus.

■■ While all the arguments of the parties, pro and con, have related to the question treated with above concerning a report (Exhibit 4) which plaintiff claims was mailed on February 21, 1967, this approach may well be beside the point. If it were to be hypothesized, arguendo, that such a report had been received by defendant, it would presumptively have been received prior to February 28, 1967. Yet the stipulation is clear that on that date a report (Exhibit 3) was in fact received based on plaintiff's entire stated capital and paid-in surplus. That being so, the later report (Exhibit 3) would be considered as amending or superseding the earlier one (Exhibit 4) and would be controlling in any event.

■■ Finally, we note the record shows that plaintiff paid a franchise tax bill of $25 on May 24, 1967, and a supplemental bill of $75 on September 1, 1967, both of which were based upon its entire stated capital and paid-in surplus (although said figures were grossly understated considering the figures set forth in the stipulation of facts).[2] These payments made three and six months after filing of the report give added confirmation to the efficacy of Exhibit 3 and, in themselves, go far toward defeating plaintiff's argument relying on its alleged filing of a report electing a different basis for payment of its taxes.

The cause is remanded with directions to vacate the judgment and enter judgment for defendant in the amount determined by computing the respective taxes and fees for the year 1967 on the basis of plaintiff's entire stated capital and paid-in surplus.

Reversed and remanded with directions.

ENGLISH and LORENZ, JJ., concur.

---

[2] Abrasive's Exhibit 3 bears a notation: "Pd. $25.00 on 5/24/67."