PHILLIPS 66 COMPANY, Plaintiff-Appellant, v. JIM EDGAR, as Secretary of State, *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0348

Opinion filed December 23, 1987.

Ralph H. Loewenstein, of Drach & Deffenbaugh, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Karen S. Rosenwinkel, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On July 31, 1985, plaintiff Phillips 66 Company (formerly Phillips Chemical Company), a subsidiary of Phillips Petroleum Company, filed

suit in the circuit court of Sangamon County seeking (1) to enjoin the Secretary of State and State Treasurer from transferring into the State's general fund additional license fees and annual franchise taxes it had paid under protest; and (2) to require return to plaintiff of all or part of the sums paid under protest. By agreement of the parties, temporary and preliminary injunctive relief was granted plaintiff *pendente lite* preventing the transfer of the funds. However, after both parties had filed motions for summary judgment, after a hearing, the court entered an order granting summary judgment to defendants on May 5, 1987. Plaintiff has appealed. We affirm.

This case concerns the requirements for filing by a foreign corporation of annual reports with the Secretary of State and payments by the corporation of certain license fees and annual franchise taxes under the format of the Business Corporation Act (Act) (Ill. Rev. Stat. 1979, ch. 32, par. 157.1 *et seq.*) as that legislation existed between 1979 and 1981. Sections 135 and 138 of the Act (Ill. Rev. Stat. 1979, ch. 32, pars. 157.135, 157.138), respectively, required such corporations to pay initial and two types of additional license fees and initial, additional, and annual franchise taxes. Additional license fees based on increases in stated capital and paid-in surplus as shown by the previous annual report and annual franchise fees were required to be paid during July of each year. Section 138 made clear that the franchise tax was to be paid in advance. Section 116 of the Act (Ill. Rev. Stat. 1979, ch. 32, par. 157.116) required foreign corporations to file their annual reports between January 15 and the last day of February of each year.

By the terms of section 136 of the Act (Ill. Rev. Stat. 1979, ch. 32, par. 157.136) the additional license fees payable in the month of July were said to be based upon a rate applied to the increase in stated capital and paid-in surplus proportioned by the relationship of the corporation's property and business in Illinois to the total property and business of the corporation. Section 138 of the Act set forth that franchise taxes should be based upon the same factors as shown by the previous annual report except that, if a foreign corporation elected in its annual report to pay its franchise taxes upon the basis of all of its stated capital and paid-in surplus, that method of assessment would be in force until an election to do otherwise was stated in a subsequent annual report filed on or before June 25 of that year and before payment of its tax or in an annual report for a subsequent year. Ill. Rev. Stat. 1979, ch. 32, par. 151.139(a).

The only readily apparent reason why a foreign corporation would elect to have its annual franchise tax determined on the full amount

of its capital and paid-in surplus rather than an apportioned amount would be that the full amount is such a small sum that obtaining apportionment would not be worth the effort of compiling the necessary figures. However, the allowance of the election created a trap for the unwary because, as with plaintiff here, after the election was made for a prospective year, additional capital or surplus might be paid in but not used for Illinois operations. Under such circumstances a substantial annual franchise tax liability might result from the election for assessment on the 100% basis, while the tax would be minimal if apportionment had not been waived.

The undisputed evidence here showed: (1) on February 12, 1980, plaintiff filed an annual report accurately setting forth a stated capital of $1,000 and no paid-in surplus and an election to be taxed on 100% of its capital structure; (2) on December 17, 1980, plaintiff's board of directors passed a resolution to activate the company, and, on January 1, March 1, June 1, and December 1, all in 1981, substantial sums were infused into the company, with each successive addition greatly increasing the paid-in surplus; (3) the next annual report timely filed in early 1981 still listed the same figures for capital structure and again elected to have the annual franchise tax based on all of that structure; (4) the amount stated in the 1981 report as paid-in surplus was inadequate because of the infusions of capital made in January of 1981; and (5) subsequently, the Secretary of State assessed plaintiff $660,430.68 for additional license fees, annual franchise taxes and penalties which he contended should have been paid in 1980 and a sum of $661,510.41 which he deemed similarly owed for 1981. Plaintiff paid the foregoing sums under protest and then filed this action for administrative review in the circuit court.

Plaintiff maintains: (1) it should not be held to its election to be assessed at 100% of its stated capital and paid-in surplus because it made its election in that respect through mistake which, under the Act, it should have been allowed to correct; (2) the imposition of such a high rate of charge against it is so disparate to its nexus to the State of Illinois as to violate due process clauses of both the Federal and State constitutions and the commerce clause; and (3) any waiver of its foregoing rights by election to be taxed on 100% of its stated capital and paid-in surplus was invalid because it was not knowingly and understandingly made.

The annual reports making the election were shown to have been made under the following circumstances. The parent company had a State tax branch which used untrained clerks to prepare and file State tax returns and annual reports for its subsidiaries. Each pre-

parer was responsible for approximately 400 returns. The practice had been for the clerks to prepare reports based on the information in the last prior report. That was done here. The report filed in 1980 was accurate because plaintiff had not been activated at the time that report was filed. The report filed in 1981 did not show the increase in capital structure which had taken place January 1, 1981. Apparently the preparer had not been advised of this. The preparer stated under oath that in making the report he only checked the data in his office, which included the activities of the plaintiff up to December 31, 1980. Both reports were checked by a coordinator, who, apparently, did not recognize the inaccuracy in the later report or the foolishness of the election in both of the reports.

On the question of whether, under the Act, plaintiff should have been allowed to make a late amendment of its reports to rescind its election, we agree with defendants and the trial court that the case of *United States Borax & Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 111, 150 N.E.2d 818, is controlling. There, a corporation had also elected to be assessed by the 100% method, and then made increases to its capital structure both before and after the June 25 cutoff date. The supreme court held that a complaint seeking relief from the imposition by the Secretary of State of the higher annual franchise tax failed to state a cause of action. Similarly, this court denied relief in *Yellow Equipment & Terminals, Inc. v. Lewis* (1976), 35 Ill. App. 3d 875, 342 N.E.2d 426, where a corporation had large capital increases in March after having opted for 100% assessment in its report filed a few weeks earlier. That corporation had made no attempt to change its election until its next annual report was filed. It contended that the change of election in the subsequent report should have related back to the period when the capital was added. This court rejected the argument because to accept the corporation's contention would have made the June 25 statutory deadline meaningless.

Plaintiff seeks to distinguish the foregoing cases from the instant case on the basis that, here, a mistake was shown. However, as we have indicated, plaintiff's agents did not unintentionally elect the 100% assessment method in the report. They did so without realizing the consequences. Obviously, that was what was also done in *Borax* and *Yellow Equipment*. Here, in regard to the sums due in July 1980, the election was made and final long before the activation of the corporation, and, once having made the election, the corporation was trapped when the paid-in surplus was greatly increased in January 1981. The same situation existed in *Borax* as to the increases in capital structure after the June 25 cutoff date there. In both *Borax* and

*Yellow Equipment,* some increases in capital structure were made at a time when the election could be rescinded. Here, that was true as to the sums assessed for the payment to be made in July 1981. In all cases, the corporate agents must have overlooked the circumstances which made the existence of the election for the 100% assessment to be very damaging.

Plaintiff points out that in *Western Union Telegraph Co. v. Lewis* (1972), 7 Ill. App. 3d 285, 287 N.E.2d 169, this court permitted amendment to an annual report after the June 25 cutoff by a corporation which, by clerical mistake, had included *earned* surplus within the amount of the stated capital. This court relied upon the provision of section 100 of'the Act (Ill. Rev. Stat. 1969, ch. 32, par. 157.100), which stated that, if a corporation failed "to apply \*\*\* for an adjustment of franchise tax by June 25 of the year in which the tax is due," a 5% penalty was to be added. This court concluded that the foregoing authorized amendments of annual reports after the June 25 date to correct clerical errors. Here, the prime responsibility in making the election was placed in an unskilled person, but the error was not clerical in nature. Rather, the error in judgment in electing to forgo apportionment arose because nobody in charge of preparing or checking the return had the foresight to anticipate the problems that might arise from the election.

We need not decide whether State legislation requiring foreign corporations to pay annual franchise taxes based upon their total stated capital and paid-in surplus without other options meets due process requirements or those of the commerce clause. Here, the plaintiff was assessed without apportionment because it had elected this method of assessment. In both *United States Borax & Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 111, 150 N.E.2d 818, and *Allstate Enterprises Stock Fund, Inc. v. Lewis* (1976), 36 Ill. App. 3d 154, 343 N.E.2d 198, the reviewing courts held that the election of the 100% assessment method without apportionment constituted a waiver of any right to apportionment. Plaintiff argues that any such waiver here was not knowing and voluntary. (See *Woods .v. Brucker Co.* (1984), 129.Ill. App. 3d 983, 473 N.E.2d 472; *Hilliard v. Woodmen of the World Life Insurance Society* (1947), 330 Ill. App. 577, 71 N.E.2d 903.) Plaintiff maintains that this case differs from *Borax* and *Allstate Enterprises* because no showing was made there that the corporations involved were as unaware of the full consequences of the election as here.

No showing was made here that persons preparing and checking the annual reports were unaware of the option available to plain-

68

tiff. The corporation was presumed to know the law applicable to it. (*People ex rel. Bernardi v. Bethune Plaza, Inc.* (1984), 124 Ill. App. 3d 791, 464 N.E.2d 1116.) As we have stated, the evidence clearly showed plaintiff's agents intended that the 100% method be selected. The defendants had no obligation to advise plaintiff that the election might not be in plaintiff's best interests. Careless procedures rather than lack of knowledge of rights was the prime factor in causing plaintiff's problem.

■ One count of plaintiff's complaint was brought under section 1983 of the United States Code (42 U.S.C. §1983 (1982)) for an alleged violation of plaintiff's constitutional rights. Defendants maintain they have a qualified immunity from suit under that legislation. We note that only injunctive relief is sought. (See *Wood v. Strickland* (1975), 420 U.S. 308, 43 L. Ed. 2d 214, 95 S. Ct. 992.) In any event, we need not decide the immunity question. We have held that no constitutional rights of plaintiff's were shown to have been violated.

We affirm the decision of the circuit court granting summary judgment to defendants.

Affirmed.

McCULLOUGH and SPITZ, JJ., concur.