KRAFT, INC., f/k/a Dart & Kraft, Inc., Plaintiff-Appellee, v. JIM EDGAR, as Secretary of State, *et al.*, Defendants-Appellants.

Fourth District   No. 4—88—0744

Opinion filed August 31, 1989.

48

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen S. Rosenwinkel and Jan E. Hughes, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Don S. Harnack, David J. Duez, and Richard A. Hanson, all of McDermott, Will & Emery, of Chicago, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

This case comes to us on appeal from an administrative review in the circuit court of Sangamon County. The plaintiff Kraft, Inc. (Kraft), sought review of the Secretary of State's (Secretary's) determination of tax liability. The circuit court reversed the Secretary's refusal to grant the plaintiff an adjustment based on the circuit court's reading of section 1.17 of the Business Corporation Act of 1983 (1983 BCA) and the plaintiff's due process claims. (Ill. Rev. Stat. 1985, ch. 32, par. 1.17.) We find the circuit court was in error on both grounds and reverse its decision.

The plaintiff Kraft, Inc., formerly known as Dart & Kraft, Inc., was incorporated in Delaware in 1980. On August 29, 1980, the plaintiff filed an application with the defendant Secretary for a certificate of authority to transact business in this State. Kraft's employee, who completed the application for the certificate, stated the present value of the property owned in Illinois and elsewhere, together with the business activity which had been transacted in Illinois and elsewhere, as of the date of filing. This was done in spite of the fact the application form required the plaintiff to estimate these values for the first year of operation in Illinois. As a result, the application listed $1,000 as the value of plaintiff's property in Illinois and $4,000 as the total of all of its property located everywhere. The estimate of business to be transacted in the first year was stated as zero.

■ Section 136 of the 1933 BCA governs the computation of the basis for license fees of foreign corporations. It provides in part:

"For the purpose of determining the amount represented in this State of the sum of the stated capital and paid-in surplus of a foreign corporation, the amount represented in this State shall be that proportion of the sum of its stated capital and paid-in surplus which the sum of (1) the value of its property located in this State and (2) the gross amount of business transacted by it at or from places of business in this State bears to the sum of (1) the value of all of its property, wherever located, and (2) the gross amount of its business, wherever transacted." (Ill. Rev. Stat. 1981, ch. 32, par. 157.136.)

Section 139 of the 1933 BCA provides for the computation of the basis for franchise taxes in the same manner. (Ill. Rev. Stat. 1981, ch. 32, par. 157.139. See also Ill. Rev. Stat. 1985, ch. 32, pars. 15.55, 15.70.) This ratio of total capital, surplus and business to that located in Illinois is called the allocation factor. The basis on which the fees and taxes on the corporation is calculated is determined by multiplying the allocation factor by the total amount of paid-in surplus and

capital. (Ill. Rev. Stat. 1981, ch. 32, pars. 157.136, 157.139.) Because the plaintiff stated the actual value instead of the estimated value of the corporation and its projected business, the allocation factor here as determined by the Secretary, a ratio of 1 to 4, a 25% allocation factor, was higher than had Kraft chosen to supply estimated values of business to be transacted on its application for a certificate.

The formation of Dart and Kraft, Inc., was the result of a planned merger between Kraft, Inc., and Dart Industries, Inc. To this end they formed a jointly owned subsidiary, Dart and Kraft, Inc. (DKI), the predecessor corporation of the plaintiff here. DKI then formed two subsidiaries, K Sub. and D Sub. Kraft then merged with K Sub., Dart with D Sub. Stockholders of both corporations received stock in the new parent DKI in return for their stock in Dart or Kraft. As a result, DKI experienced an enormous increase in its capital and paid-in surplus. On September 25, 1980, this stood at $2,657,186,647. Both Dart and Kraft continued to operate separately but as subsidiaries of their new parent DKI. In December of 1980, the plaintiff issued additional shares and increased its capital and paid-in surplus by $509,022. Although required by section 117 of the Business Corporation Act (1933 BCA) (Ill. Rev. Stat. 1981, ch. 32, par. 157.117) to report these increases within 60 days of their occurrence, the plaintiff did not report them until almost five years later on August 15, 1985.

Following the 1985 report, on September 12, 1985, the Secretary issued a notice of assessment of tax liability for the year 1980, utilizing the 25% allocation factor. This resulted in an assessment of franchise tax, license fees, and penalties of $1,331,119.84. On November 5, 1985, the plaintiff submitted a petition for review and refund challenging the allocation factor and, the following day, submitted a statement of corrections. On January 16, 1986, the Secretary denied the petition for adjustment on the grounds the statute of limitations had run. The Secretary also refused to accept the statement of corrections, indicating the statements on the application were estimates and could not be factually incorrect under section 1.15 of the 1983 BCA. (Ill. Rev. Stat. 1985, ch. 32, par. 1.15.) Subsequently the plaintiff also filed a report following merger on June 16, 1986.

Kraft sought review of the Secretary's refusal to consider the petition for refund and review and a statement of correction. The hearing officer found the plaintiff's petition for refund and review was timely filed and plaintiff was entitled to file a statement of corrections. The Secretary accepted the hearing officer's recommendation regarding the statement of corrections but rejected the recommendation plaintiff was entitled to file a petition for review and refund. The

Secretary also found the merger provisions of the 1983 BCA did not apply to the plaintiff. The Secretary entered a final order allowing the plaintiff to file its statement of corrections but denying the petition for refund and review.

The plaintiff then filed its complaint for administrative review in the circuit court of Sangamon County on February 10, 1988. The circuit court determined the Secretary had erred in finding the plaintiff's petition for review was untimely and found the due process rights of the plaintiff were violated by that finding. The circuit court entered judgment ordering the Secretary to reduce the assessment of taxes and fees for 1980 from $1,331,119.84 to $166.66.

The Secretary of State appeals on the grounds that (1) the circuit court erred in interpreting section 1.17(a)(2) of the 1983 BCA as allowing the plaintiff to file a petition for review; and (2) the enactment of the 1983 BCA did not reduce the limitations period such that Kraft's due process rights were diminished. Ill. Rev. Stat. 1985, ch. 32, par. 1.17(a)(2).

■ The 1983 BCA sets out the following scheme for the reporting of any increase of capital or paid-in surplus. Section 1.60 provides the 1983 BCA does not affect rights and liabilities established prior to the 1983 BCA effective date of July 1, 1984, but that all computations and adjustments must take place on the basis prescribed by the 1983 BCA. In this case, Kraft's original liability arose under the 1933 BCA but its filing and petition for adjustment will come under the terms of the 1983 BCA and subsequent amendments, the law in effect at the time of the filing of Kraft's petition. Ill. Rev. Stat. 1985, ch. 32, par. 1.60.

■ Section 14.20 requires corporations to report increases of capital and issuance of shares within 60 days. The Secretary of State must collect the additional license fees (section 15.50) and an additional franchise tax (section 15.65). The basis for the license fees and franchise tax increases with the increase in the paid-in capital disclosed in any report related to the issuance of shares, exchange, or reclassification of shares, or increase of paid-in capital (sections 15.55 and 15.70). Section 15.55 also provides the proportion of paid-in capital attributable to this State is the amount stated in the last annual report on file or, if no annual report is on file on the date of increase, *from the information contained in the application for a certificate of authority to transact business in this State.* Ill. Rev. Stat. 1985, ch. 32, pars. 14.20, 15.50, 15.65, 15.55, 15.70.

Briefly stated, plaintiff filed an application for a certificate of authority on August 29, 1980. It estimated the total of its property at

$4,000, $1,000 of which was in Illinois. No estimated business transactions were reported. Under the statutory scheme discussed above, the plaintiff's allocation factor was .25, *i.e.*, it was taxed on .25 of its total property and gross business, because .25 of its property and gross business were located in Illinois. On September 25, 1980, plaintiff engaged in a transaction which increased its capital and paid-in surplus to over $2.5 billion dollars. In December 1980, this was increased by another $500,000. Plaintiff did not report the increase to the Secretary but the increases were reflected in the annual reports filed starting in 1980. Because the plaintiff had not yet filed an annual report at the time of the increase in capital, the allocation factor employed in determining the additional fees and taxes was determined based on the figures supplied in the application on file. This was .25, instead of the .0000049, which plaintiff contends is the appropriate allocation factor. This led to an assessment of taxes, fees, and penalties in excess of $1,300,000, instead of the $166.66, which the plaintiff argues is the appropriate assessment.

The Secretary argues the plaintiff had no right to petition for adjustment of the assessment. In support of its position, the Secretary quotes the language of section 1.17(a)(2) of the 1983 BCA in effect at the time of Kraft's filing of documents in 1985:

"No adjustment of an assessment shall be made unless a petition for such shall have been made within three years after the amount to be adjusted *should have been paid.*" (Emphasis added.) Ill. Rev. Stat., 1984 Supp., ch. 32, par. 1.17(a)(2).

Plaintiff argues the three-year period began to run on December 12, 1985, when the Secretary rendered its assessment for the additional taxes and fees. The Secretary counters that a straightforward reading of the statutory language requires this court to hold the three-year period began to run some time after the 60-day reporting period for the increases in capital and surplus made in September and December of 1980 ended. Though the Secretary does not state a precise date for the commencement of the three-year limitation period, it implies the period would begin when the 60-day reporting period had expired. However, the Secretary clearly contends the statutory limitation period of three years had run when the Secretary rendered its assessment in December of 1985, and Kraft has no right to petition for an adjustment. Both parties agree the tax liability arose when the increase in capital and surplus was made in 1980 and the plaintiff should have reported this to the Secretary.

We conclude the Secretary's interpretation of section 1.17 is correct. As it existed in 1985, section 1.17 of the 1983 BCA expressly

limited the time available for an adjustment to three years after the assessment should have been paid. In this case, because Kraft did not report the increase in capital and surplus, the assessment was not made until five years after the influx of capital took place. The three-year limitation period for petitioning for adjustments had passed. Had Kraft complied with the statute and filed within 60 days (section 14.20, formerly section 97 (Ill. Rev. Stat. 1981, ch. 32, par. 157.97)) the current dilemma would not have arisen.

Kraft vigorously argues the Secretary's action has denied it due process of law and the circuit court accepted this argument. Kraft argues the Secretary's assessment came after the statutory period for adjustment had run and left it with no proper redress for the taking of its property. The Secretary counters that Kraft has waived any due process considerations by its failure to file the required reports and its election to be taxed at the allocation rate it selected on its initial application.

Kraft has cited the leading Illinois cases considering due process arguments in the context of foreign corporation taxation but claims they have been superseded by the enactment of the 1983 BCA, which provides a procedure for review of the Secretary's assessment, or are distinguishable. (*Allstate Enterprises Stock Fund, Inc. v. Lewis* (1976), 36 Ill. App. 3d 154, 343 N.E.2d 198; *United States Borax & Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 111, 150 N.E.2d 818; *Phillips 66 Co. v. Edgar* (1987), 164 Ill. App. 3d 63, 517 N.E.2d 345.) Kraft has failed to appreciate the due process considerations which underlie those opinions and their applicability to this situation.

In *United States Borax*, the Illinois Supreme Court was called upon to consider a situation similar to the one here. There, the corporation had the option of paying the franchise tax on its entire stated capital and paid-in surplus or paying proportionately. The corporation elected to pay on the entire capital and surplus and then infused a substantial amount of new capital into the company without amending its annual report to choose a different method of assessment within the statutory limitation period. As a result, the corporation became liable for taxes on the whole of its capital. The court held the corporation had several choices to avoid paying the additional tax. It could have elected to choose the proportional method from the start, or filed an amended annual report. By failing to take advantage of either of these options, it had selected how it would be taxed. In regard to the corporation's due process arguments, the court held they had been waived where the corporation was being taxed at its own election on the whole of its property.

This court in *Allstate Enterprises* followed the supreme court's decision in *United States Borax* and stated:

"Clearly plaintiff was aware of its alternatives, since plaintiff, in its original application stated that it elected to pay its franchise tax upon the entire stated capital and paid-in surplus and omitted the information which would have been necessary to make a proportional assessment. We find this is a clear and voluntary waiver, binding on plaintiff." *Allstate Enterprises*, 36 Ill. App. 3d at 159, 343 N.E.2d at 202.

This court again considered this issue in *Phillips 66*. There, the corporation elected to pay its tax based on its total capital at a time when this was minimal and realized too late the liability which accrued when a large influx of capital took place. In that case, this court rejected the corporation's argument of mistake. This court held the 1933 BCA permitted correction of clerical errors but not retraction of statements which were made intentionally but had unforeseen consequences.

In this case, Kraft's employee responsible for filing the statement testified it was a mistake to file the statement as it was, but the figures stated accurately reflected the state of the company at that time. This is clearly not the type of "clerical error" discussed in *Phillips 66*. There the court declined to consider any due process claim where the additional liability arose out of the election of the corporation. The corporation there could easily have elected to pay on a proportional basis but had not chosen to do so.

This case is not one which involved a choice between a tax on all or merely a proportion of the assets of the company. DKI was taxed proportionally. The issue which underlies the due process argument here is what that proportion is to be. Kraft and Dart created DKI for the express purpose of acting as a holding company for a proposed merger. The enormous influx of capital was not only foreseeable but the very reason for the existence of DKI. By supplying only the figures which it did, DKI diminished its initial taxable basis to $1,000 rather than the substantially higher figure which would have represented a realistic estimate of capital, surplus, and business attributable to Illinois. The record clearly shows the application required DKI to estimate its property and business transactions in its first year. The failure of the corporation to supply this information meant the allocation factor was incorrect. This error was compounded when Kraft failed to file an amended report when its capital structure changed dramatically.

■ While not on all fours factually with the cases discussed

above, we find the reasoning therein relevant to the fact situation here. Kraft had the option of being taxed under the lower allocation factor which it now seeks. Its election was not shown to be the result of a clerical error or mistake, but a conscious if unwise choice. A corporation is presumed to know the law applicable to it. (*People ex rel. Bernardi v. Bethune Plaza, Inc.* (1984), 124 Ill. App. 3d 791, 464 N.E.2d 1116.) We need not reach the due process or commerce clause claims of Kraft because the corporation has waived its claim by electing to be taxed as it has.

■ Kraft has also raised a number of other arguments in support of the circuit court's ruling. It argues the three-year limitation for appeals of assessment was introduced in the 1983 BCA and application of this limitation to it here is a violation of its due process rights because the limitations period in the 1983 BCA has reduced its right to appeal. Kraft has not shown its rights were adversely affected when the new statute came into effect. The 1933 BCA statute merely permitted but did not require the Secretary to provide an opportunity for corporations to appeal their assessment. (Ill. Rev. Stat. 1983, ch. 32, par. 157.143.) It did not provide any limitation period. In the 1983 BCA, however, corporations were given a right to appeal within the three-year limitation period. (Ill. Rev. Stat. 1985, ch. 32, par. 1.17.) Kraft has failed to show how its rights have been diminished in a transition from a purely discretionary review by the Secretary to the present review as of right within the statutory limitation. Even assuming the limitation period was shortened, the legislature may validly shorten the time in which a suit may be brought so long as a reasonable time exists for the presentation of an existing claim. (*Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354, 288 N.E.2d 423.) The 1983 BCA became effective on July 1, 1984. (Ill. Rev. Stat. 1985, ch. 32, par. 1.01 *et seq.*) Kraft waited over a year until August 15, 1985, to submit its report on the additional capital and statement of correction and until November 5, 1985, to petition the Secretary for review. Given Kraft's delay, it is in a poor position to argue it has been denied due process.

■ Kraft also contends the particular posture of this case denies it due process where the Secretary has levied an assessment five years after the liability arose and after the running of the limitation period. The corporation's argument on this point is not well-taken for the reason the tardiness of the Secretary's assessment was due entirely to the failure of the plaintiff to file the required reports concerning the additional capital and surplus. Once again plaintiff's acts have waived any due process or commerce clause claims which it

might have had.

■ Finally, Kraft argues it is entitled to file a report of merger under section 14.25 of the 1983 BCA. (Ill. Rev. Stat. 1985, ch. 32, par. 14.25.) This section also contains a 60-day reporting period where the merger is not reported in any other filing required by the 1983 BCA. In this respect it is identical to its predecessor section 119 of the 1933 BCA. (Ill. Rev. Stat. 1983, ch. 32, par. 157.119.) In its petition for refund, Kraft represented its transaction did not comply with the statutory definition of merger in Delaware, the home State of all three corporations. Nevertheless, it argued it should be considered a merger under the terms of Illinois' 1933 BCA. Section 113 of the 1933 BCA required that a merger qualify as a statutory merger in the State of incorporation before it may file a report of merger with the Secretary. Since DKI reported it did not qualify for a statutory merger in Delaware, it was not entitled to file a report in Illinois. Ill. Rev. Stat. 1983, ch. 32, par. 157.113; see also Ill. Rev. Stat. 1985, ch. 32, par. 13.35.

Here again, Kraft did not meet the required time limitations. It failed to file within the 60-day requirement for filing a report of merger and has not argued any other filing with the Secretary relieved it of the obligation to do so. It only attempted to file five years after the fact when the three-year review period of section 1.17 had expired. Section 1.17 is applicable to all requests for refunds and adjustments and Kraft, by failing to file its petition in a timely fashion, has waived any right to an adjustment based on such a filing.

For the reasons stated above Kraft was not entitled to an adjustment of the Secretary's assessment nor do we find any merit in Kraft's due process claims. While we recognize the result of our decision may appear harsh, Kraft has brought itself to this predicament through its own actions and must now bear the consequences of those actions.

The decision of the circuit court is reversed, and the decision of the Secretary is reinstated.

Reversed; Secretary of State's order affirmed and reinstated.

McCULLOUGH, P.J., and LUND, J., concur.