(No. 69308.—

KRAFT, INC., Formerly Known as Dart & Kraft, Inc., Appellant, v. JIM EDGAR, Secretary of State, *et al.*, Appellees.

*Opinion filed September 26, 1990.*

Don S. Harnack, of McDermott, Will & Emery, of Chicago (David J. Duez and Richard A. Hanson, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE RYAN delivered the opinion of the court:

This appeal involves a dispute over a 1985 assessment of additional franchise taxes, license fees and penalties against plaintiff, Kraft, Inc., for the year 1980. Plaintiff asserts that it mistakenly inserted incorrect monetary figures in its 1980 "Application for Certificate of Authority of Foreign Corporation" to transact business in Illinois, and that the Secretary of State relied upon those figures in calculating the allocation factor on which the 1985 assessment was based. Plaintiff seeks an adjustment of the Secretary's assessment pursuant to section 1.17 of the Business Corporation Act of 1983 (Ill. Rev. Stat. 1985, ch. 32, par. 1.17) (1983 Act). The Secretary responds that plaintiff is not entitled to rely on section 1.17 of the 1983 Act because plaintiff failed to file its petition for review and refund within the three-year statute of limitations contained in the 1983 Act (Ill. Rev. Stat., 1984 Supp., ch. 32, par. 1.17(a)(2)), in effect at the time plaintiff filed its report in 1985. Plaintiff counters that the Secretary's action deprives plaintiff of its right to a fair apportionment of its franchise taxes and license fees secured by the commerce clause of the Federal Constitution (U.S. Const., art. I, §8). Plaintiff further argues

that the Secretary's refusal to allow plaintiff to challenge the assessment has deprived plaintiff due process (U.S. Const., amend. XIV, §1). Finally, the Secretary contends that plaintiff waived its commerce clause and due process rights with respect to the assessment by "electing" to complete the application for a certificate of authority as it did. The circuit court of Sangamon County, on administrative review, set aside the Secretary's refusal to grant an adjustment and reduced the assessment of taxes and fees for 1980 from $1,331,119.84 to $166.66. The appellate court, however, agreed with the Secretary and reversed the judgment of the circuit court. (188 Ill. App. 3d 46.) We granted plaintiff's petition for leave to appeal (107 Ill. 2d R. 315). We hold that plaintiff's petition for an adjustment of the assessment was timely filed, pursuant to section 1.17 of the 1983 Act. Accordingly, we reverse the judgment of the appellate court, affirm the judgment of the circuit court, and remand for further proceedings.

The essential facts of this case are not disputed. In 1980 Kraft, Inc., and Dart Industries, Inc., were planning to merge. To this end they created plaintiff Dart & Kraft, Inc. (now known as Kraft, Inc.), to serve as a jointly owned subsidiary for the purpose of owning all the stock of Kraft, Inc., and Dart Industries, Inc. Plaintiff was incorporated under the laws of Delaware in June 1980. On August 29, 1980, plaintiff filed with the Secretary of State an original application for a certificate of authority to transact business in Illinois as a foreign corporation. The application form required plaintiff to *estimate* the total value of property of the corporation for the following year both in Illinois and everywhere. The form further required plaintiff to *estimate* the total business to be transacted by plaintiff for the following year both in Illinois and everywhere. These figures are used by the Secretary of State to calculate the percentage of

the corporation capital and paid-in surplus subject to Illinois franchise tax and license fees. A foreign corporation may, however, elect to be taxed on its entire capital and paid-in surplus. The employee of plaintiff who completed the application, instead of giving *estimates*, stated the *then current value* of property owned in Illinois and everywhere, together with the business activity which had been transacted in Illinois and everywhere as of the date of filing. Consequently, the application listed $1,000 as the value of plaintiff's property in Illinois and $4,000 as the value of all its property. The estimate of business to be transacted in the first year was stated as zero.

Pursuant to the plan of merger between Kraft, Inc., and Dart Industries, Inc., plaintiff formed two subsidiaries: K Sub and D Sub. In September 1980, Kraft, Inc., merged with K Sub and Dart Industries, Inc., merged with D Sub. Stockholders of both Kraft, Inc., and Dart Industries, Inc., exchanged their stock for stock in the new parent corporation, plaintiff herein. As a result, plaintiff experienced an enormous increase in its capital and paid-in surplus. On September 25, 1980, this increase stood at $2,567,186,647. In December 1980, plaintiff issued additional shares of common stock, further increasing its capital and paid-in surplus by $509,027. Section 117 of the Business Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 157.117) (1933 Act) required plaintiff to report these increases to the Secretary of State within 60 days of their occurrence. Plaintiff did not report these increases to the Secretary until August 15, 1985, nearly five years later. These increases were, however, reflected on each of plaintiff's annual reports filed with the Secretary for 1981 through 1985. In response to the August 15, 1985, report, which reported the 1980 increase in capital and paid-in surplus, the Secretary issued plaintiff, on September 12, 1985, a no-

tice of assessment of additional franchise taxes, license fees and penalties for the year 1980.

Section 136 of the 1933 Act governed the computation of the basis for license fees of foreign corporations. That section provided in part:

> "For the purpose of determining the amount represented in this State of the sum of the stated capital and paid-in surplus of a foreign corporation, the amount represented in this State shall be that proportion of the sum of its stated capital and paid-in surplus which the sum of (1) the value of its property located in this State and (2) the gross amount of business transacted by it at or from places of business in this State bears to the sum of (1) the value of all of its property, wherever located, and (2) the gross amount of its business, wherever transacted." (Ill. Rev. Stat. 1979, ch. 32, par. 157.136.)

Section 139 of the 1933 Act provided for computation of the basis for franchise taxes in the same manner. (Ill. Rev. Stat. 1979, ch. 32, par. 157.139. See also Ill. Rev. Stat. 1985, ch. 32, pars. 15.55, 15.70.) This ratio of total capital, surplus and business to that located in Illinois is called the allocation factor. Because plaintiff's employee had mistakenly filled in the blanks on the original application showing actual values at the time the application was filed, instead of estimates for the year, the application stated that the value of plaintiff's property in Illinois was $1,000 and that the total value of all plaintiff's property was $4,000. The application also stated that the amount of business to be transacted the following year was zero and the amount of business to be transacted in Illinois was zero. Thus, using the $1,000 to $4,000 ratio, the allocation factor was determined by the Secretary to be 0.25. The basis on which corporate franchise taxes and license fees are calculated is determined by multiplying the allocation factor by the total amount of paid-in surplus and capital.

The Business Corporation Act of 1983 became effective on July 1, 1984. Section 1.60 of the 1983 Act provides that the 1983 Act does not affect any rights accrued or established, or any penalty incurred, prior to the 1983 Act effective date, but that computation and adjustments of franchise taxes and penalties past due from a corporation shall be made on the basis of the 1983 Act. Ill. Rev. Stat. 1985, ch. 32, par. 1.60.

Section 15.50 of the 1983 Act, which is virtually identical to its predecessor, section 135 of the 1933 Act, provides, in pertinent part, that the Secretary of State shall:

"charge and collect from each foreign corporation:

(a) An initial license fee at the time of filing ***.

(b) An additional license fee at the time of filing (1) a report of the issuance of additional shares, or (2) a report of an increase in paid-in capital without the issuance of shares, or (3) a report of an exchange or reclassification of shares ***." (Ill. Rev. Stat. 1985, ch. 32, par. 15.50; Ill. Rev. Stat. 1979, ch. 32, par. 157.135.)

Section 15.65 of the 1983 Act, like its predecessor, section 138 of the 1933 Act, similarly provides, in relevant part, that each foreign corporation "shall pay to the Secretary of State" an initial franchise tax at the time of filing its application for a certificate of authority to transact business, and an additional franchise tax at the time of filing a report of the issuance of additional shares, or a report of an increase in stated capital or paid-in surplus, or a report of an exchange or reclassification of shares. (Ill. Rev. Stat. 1985, ch. 32, par. 15.65; Ill. Rev. Stat. 1979, ch. 32, par. 157.139.) Section 15.55 of the 1983 Act provides that the basis for an additional license fee payable by a foreign corporation shall be the increased amount of paid-in capital without issuance of additional shares, or of an exchange or reclassification of shares. Section 15.70 of the 1983 Act provides for the

calculation of the basis for additional franchise taxes in a similar manner. Section 15.55 also provides that the proportion of paid-in capital attributable to Illinois is the amount stated in the last annual report on file or, if no annual report is on file on the date of increase, *from the information contained in the application for a certificate of authority to transact business in this State.* Ill. Rev. Stat. 1985, ch. 32, par. 15.55.

In the present case, plaintiff had no annual report on file in 1980 at the time of the relevant increase in capital and paid-in surplus. When plaintiff, in 1985, finally did file with the Secretary a report of this increase, the Secretary assessed the additional franchise taxes, license fee and penalty at issue here on the basis of the allocation factor calculated from the figures appearing in plaintiff's application for a certificate of authority to transact business in Illinois. Thus, a 0.25 allocation factor was applied to the more than $2.5 billion increase in capital and paid-in surplus. The end result was that plaintiff's assessed liability for additional franchise taxes, license fees and penalties totalled $1,331,119.84. The Secretary apparently does not dispute that had plaintiff properly provided actual estimates on its application for a certificate of authority in accordance with the instructions therein, plaintiff's assessed liability for additional franchise taxes and license fees for 1980 would be only $166.66.

On November 5, 1985, plaintiff submitted to the Secretary a petition for review and refund pursuant to section 1.17 of the 1983 Act, challenging the assessment and the allocation factor relied upon by the Secretary. The following day, plaintiff submitted a statement of correction pursuant to section 1.15 of the 1983 Act, correcting the erroneous information contained in its original application for a certificate of authority to transact business. On January 16, 1986, the Secretary denied plain-

tiff's petition for review and refund and refused to accept the statement of correction.

Plaintiff sought review of the Secretary's action. A hearing was held on December 10, 1986. The hearing officer, in his recommended decision, found that plaintiff had timely filed its petition for review and refund pursuant to section 1.17(a)(2) of the 1983 Act, and that pursuant to section 1.15 of the 1983 Act plaintiff was entitled to use a statement of correction in order to correct erroneous information contained in the original application for a certificate of authority to transact business. The Secretary then issued a final order accepting the hearing officer's recommendation with regard to the statement of correction, but rejecting the recommendation concerning the petition for review and refund.

The Secretary's refusal to accept plaintiff's petition turned, and continues to turn, on his interpretation of section 1.17(a)(2) of the 1983 Act as it was in effect in 1985. That section provides that "[n]o adjustment of an assessment shall be made unless a petition for such shall have been made within three years after the amount to be adjusted should have been paid." (Ill. Rev. Stat., 1984 Supp., ch. 32, par. 1.17(a)(2).) This provision was later amended to provide that petitions for adjustment of assessments must be made within three years after the amount to be adjusted should have been "assessed or paid." (Ill. Rev. Stat. 1985, ch. 32, par. 1.17(a)(2) (eff. January 1, 1986).) The Secretary asserts that since plaintiff was required to file a report of its increase in capital and paid-in surplus within 60 days of the increase, the statute of limitations contained in section 1.17(a)(2) began to run at some point in 1980 after the increase and after expiration of the 60-day reporting period. Thus, according to the Secretary, plaintiff's 1985 petition for review and refund was not timely filed.

On February 10, 1988, plaintiff filed a complaint in the circuit court of Sangamon County, seeking administrative review of the Secretary's decision. The circuit court found that the Secretary erred in interpreting section 1.17(a)(2) so as to bar plaintiff's petition for review and refund, and that to so apply that section deprived plaintiff of due process. The circuit court entered judgment ordering the Secretary to reduce the assessment of additional franchise taxes and license fees from $1,331,119.84 to $166.66.

The appellate court reversed, accepting the Secretary's interpretation of section 1.17(a)(2). (188 Ill. App. 3d at 52-53.) The appellate court further held that plaintiff waived its due process and commerce clause rights to challenge the assessment by "electing" to fill out the application for a certificate of authority to transact business as it did. For the reasons set forth below, we reverse.

The parties do not dispute that in 1980, when plaintiff experienced the increase in capital and paid-in surplus giving rise to liability for additional franchise taxes and license fees, there was no mechanism provided by the 1933 Act whereby plaintiff could have corrected information provided in its application for a certificate of authority to transact business in Illinois or could have petitioned the Secretary for a modification of the assessment. The appellate court suggested that section 143 of the 1933 Act (Ill. Rev. Stat. 1979, ch. 32, par. 157.143) vested the Secretary with discretionary authority to provide plaintiff an opportunity to challenge the assessment. (188 Ill. App. 3d at 55.) That section states that the Secretary shall have the power to hear and determine objections to assessments, and to change or modify such assessments prior to payment. Section 143, however, is addressed only to annual franchise taxes, and not to additional franchise taxes as are in issue here. (Further,

Attorney General Opinion No. 5—1322, issued December 13, 1977, states that the "certificate of authority of a foreign corporation may not be amended to change the basis for computing additional license and franchise taxes which become due" (1977 Ill. Att'y Gen. Op. 216, 219).) It is not questioned by either party here that, in 1980, Illinois law did not afford foreign corporations any right either to correct information erroneously supplied in an application for certificate of authority to transact business in Illinois, or to challenge an assessment based on such information.

The 1983 Act, however, as it was in effect in 1985, at the time plaintiff filed its report and later its statement of correction, did provide corporations an opportunity to correct information contained in the application for certificate of authority to transact business. (Ill. Rev. Stat. 1985, ch. 32, par. 1.15.) Section 1.15 provided:

"Whenever any instrument authorized to be filed with the Secretary of State under any provision of this Act has been so filed and *** contains any misstatement of fact, typographical error, error of transcription or any other error or defect or was defectively or erroneously executed, such instrument may be corrected by filing *** a statement of correction."

An amendment to section 1.15, effective January 1, 1986—after plaintiff had filed its statement of correction—precludes the use of a statement of correction to alter estimates provided in an application for a certificate of authority of a foreign corporation. (Ill. Rev. Stat. 1987, ch. 32, par. 1.15(e)(5).) In any event, the Secretary in the present case has accepted the hearing officer's opinion that plaintiff was entitled to file a statement of correction to correct the figures provided in its application for a certificate of authority. The only remaining issue is, therefore, whether plaintiff was entitled to file a petition for review and refund challenging the Secre-

tary's assessment. Resolution of that issue turns on the interpretation of section 1.17(a)(2) of the 1983 Act, as it was effective in 1985, that is, the three-year limitation on adjustment of assessments.

In interpreting a statute, the primary rule, to which all other rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. (*People v. Goins* (1988), 119 Ill. 2d 259, 265; *Metropolitan Life Insurance Co. v. Washburn* (1986), 112 Ill. 2d 486, 492.) Legislative intent is best evidenced by the language used by the legislature, and where an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express. (*Goins*, 119 Ill. 2d at 265; *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84; *Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363.) Further, in ascertaining the meaning of a statute, the statute should be read as a whole with all relevant parts considered. (*People v. Jordan* (1984), 103 Ill. 2d 192, 206; *Huckaba v. Cox* (1958), 14 Ill. 2d 126, 131; *People ex rel. Roan v. Wilson* (1950), 405 Ill. 122, 127-28.) A statute should be construed so that no word or phrase is rendered superfluous or meaningless. *People v. Parvin* (1988), 125 Ill. 2d 519, 525; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362-63.

The limitations provision of section 1.17(a)(2) of the 1983 Act commenced running when the taxes or fees "should have been paid." (Ill. Rev. Stat. 1985, ch. 32, par. 1.17(a)(2).) The Act provides that additional franchise taxes are payable "*at the time of filing*" a report of increase in capital or paid-in surplus. (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 32, par. 15.65(b).) The Act similarly provides that the Secretary shall "charge and collect" an additional license fee *at the time of filing* such a report by a foreign corporation. (Ill. Rev. Stat.

1985, ch. 32, par. 15.50(b).) By its terms, section 1.17 provides corporate taxpayers an opportunity to challenge franchise taxes, license fees or penalties allegedly erroneously "assessed or paid." Clearly, the legislature did not intend to deprive such taxpayers of the benefit of this provision prior to an actual assessment or payment of tax, fees or penalties. Unquestionably, the report of increases should have been filed within 60 days after the increases, *i.e.*, in late 1980 or early 1981. The statute of limitations of section 1.17(a)(2), however, is tied directly to the time when payment is actually due rather than when the report on which an assessment is made should have been filed. Additional franchise taxes, by the language of the statute, are due at the time of filing the report of increase. Additional license fees are due at the time an assessment is made at the time of filing of the report. The legislature has provided for the eventuality of late filings by a corporation in section 16.05. That section provides for the imposition of penalties on corporations for failure to file a report within the prescribed period. (Ill. Rev. Stat. 1985, ch. 32, par. 16.05.) Such penalties should serve as adequate incentive for corporations to comply with filing deadlines. Our construction of section 1.17(a)(2) does not, therefore, as the Secretary suggests, render the 60-day reporting requirement meaningless. Nor does it render the limitations provision contained in section 1.17(a)(2) meaningless. Were we to accept the Secretary's interpretation of section 1.17 we would attribute to the statute a meaning other than that expressed by its language. We decline to do so.

We therefore find that the plaintiff was not barred from filing its petition for review and for refund by the three-year limitation period of section 1.17(a)(2), because the limitation period did not begin to run until the filing of the report of the 1980 increase on August 15, 1985.

In view of our holding, it is not necessary to consider whether plaintiff's erroneous filing of the original application constituted an "election" to be taxed in this State on the allocation factor revealed by the figures inserted in that application, or whether plaintiff had "waived" any rights by its failure to file its report within 60 days after the increase in capital and paid-in surplus in 1980, as required by statute. The "election" question relates to plaintiff's right under the commerce clause to be proportionately taxed. The "waiver" question relates to plaintiff's due process claim. In view of our holding, these questions are not material.

For the above reasons, we reverse the judgment of the appellate court, affirm the judgment of the circuit court, and remand this cause to the circuit court of Sangamon County for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*