In re MARKOS GURNEE PARTNER-SHIP, Diplomat North, Inc., and PCS Hotels, Debtors.

STATE OF ILLINOIS, DEPARTMENT OF REVENUE, Plaintiff,

v.

Catherine STEEGE, in her capacity as Trustee of the Estates of Markos Gurnee Partnership, Diplomat North, Inc., and PCS Hotels, Defendants.

Bankruptcy Nos. 91 B 17242, 91 B 18792 and 91 B 18793.

Adv. No. 93 A 00902.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 7, 1993.

Catherine Steege, Jerry L. Switzer, Jr., Jenner & Block, Chicago, IL, Chapter 7 Trustee.

Jeffrey Stange & Associates, Wilmette, IL, for debtors.

Alex Terras, Rusty Payton, Burke, Wilson & McIlvaine, Chicago, IL.

Jeffrey R. Liebman, Dardick & Denlow, Chicago, IL.

Mike Desmond, U.S. Trustee's Office, Chicago, IL.

James Newbold, Illinois Dept. of Revenue, Chicago, IL, for Illinois Dept. of Revenue.

Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, IL, Chapter 11 Trustee.

Scott L. Hammel, Sonnenschein, Nath & Rosenthal, Chicago, IL.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This adversary proceeding puts into question whether two tax laws of the State of Illinois—the Hotel Operators' Occupation Tax Act and the Use Tax Act—create trusts in funds collected pursuant to their terms. The question arises in the bankruptcy of three related entities that owned a hotel and a restaurant business. The cases began in Chapter 11 of the Bankruptcy Code, and the business was operated for a time by a Chapter 11 trustee. The Chapter 11 trustee did not pay all of the taxes that became due under the two state tax laws. The cases were then converted to Chapter 7, and a new trustee took possession of the funds in the debtors' accounts. Thereafter, the Illinois Department of Revenue asserted that the state had an equitable interest in the debtors' funds to the extent of the unpaid taxes. The Chapter 7 trustee denied this assertion and contended that the state is merely an administrative creditor. The issue is now before the court on cross motions for summary judgment. For the reasons set forth below, the court finds that the state tax laws in question impose no trust obligations and that the state does not have an equitable interest in the funds.

### Jurisdiction

The bankruptcy court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. § 1334(a), (b), and (d); 28 U.S.C. § 157(a), (b)(1), and (b)(2); and General Rule 2.33 of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).[1]

### Findings of Fact

The relevant material facts are undisputed. On August 14, 1991 Markos Gurnee Partnership filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On September 5, 1991, two related entities—Diplomat North, Inc., and PCS Hotels, Inc.—also filed for relief under Chapter 11. The three cases were substantively consolidated and a single Chapter 11 trustee was appointed. The estate created by the consolidated cases included a hotel and a restaurant, which the Chapter 11 trustee operated from the date of his appointment until December 17, 1992, when the cases were converted to Chapter 7. In connection with his operation of the hotel and restaurant, the Chapter 11 trustee collected certain state taxes, as follows:

---

**1.** The action is one that would have been within the summary jurisdiction of a bankruptcy court under the Bankruptcy Act of 1898, since it seeks to determine the ownership of property in the possession of the debtors. *Katchen v. Landy*, 382 U.S. 323, 326–27, 86 S.Ct. 467, 40–71, 15 L.Ed.2d 391 (1966); *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876 (1940).

| Year | Month | Use Tax | Hotel Operators' Occupation Tax | Total Tax |
|---|---|---|---|---|
| 1991 | October | $5,763.90 | $7,052.40 | $12,816.30 |
| | November | 4,806.20 | 7,044.05 | 11,850.25 |
| | December | 5,145.77 | 3,920.51 | 9,066.28 |
| | | | | $33,732.83 |
| 1992 | November | $4,737.00 | $6,372.56 | $11,109.56 |
| | December | 3,434.00 | 4,062.37 | 7,496.37 |
| | | | | $18,605.93 |

The Chapter 11 trustee deposited these tax proceeds into the general accounts of the estates, but did not remit the proceeds to the State of Illinois. These general accounts had a negative balance in February, 1992, but, after the collection of taxes in November and December, 1992, the accounts always had balances in excess of the taxes collected in those months. When the debtors' funds were turned over to the Chapter 7 trustee, they had balances totaling $82,533.19.

In the course of the Chapter 7 administration, the Illinois Department of Revenue filed a complaint against the Chapter 7 trustee to determine whether the state had an equitable interest in the funds, the Chapter 7 trustee filed an answer, and, following discovery, the parties each moved for summary judgment.

### Discussion

The cross motions for summary judgment in this proceeding present one issue: whether the State of Illinois has equitable ownership of any portion of the $82,533.19 received by the Chapter 7 trustee upon conversion.[2]

*Summary judgment standards.* The Federal Rules of Bankruptcy Procedure provide for the entry of summary judgment where "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 (incorporating Fed. R.Civ.P. 56). A fact is "material" if the governing substantive law identifies the fact as one which might affect the outcome of the suit, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and a dispute about a material fact is "genuine" if the evidence in the record, taken as a whole, is such that a reasonable finder of fact could find in favor of the non-moving party on that issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).[3]

The statements of undisputed facts submitted by the parties in connection with their summary judgment motions show no genuine issue of material fact. Thus, the court must determine whether either party is entitled to judgment as a matter of law. *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988);

2. The parties also disputed the extent to which any equitable interest of the State of Illinois could be traced to the funds held by the Chapter 7 trustee. In light of the conclusions reached in this decision, it is not necessary to reach the tracing issue.

3. In determining whether there is a genuine dispute about a material fact, the court cannot weigh evidence. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *Valley Liquors,* 822 F.2d at 659. Rather, it must assess whether there is sufficient evidence favoring the non-moving party for a reasonable finder of fact to find in favor of that party on the issue of material fact. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *Valley Liquors,* 822 F.2d at 659. In assessing the sufficiency of the evidence, the court must con-sider the applicable substantive standard of proof, for example, preponderance of the evidence, that would apply to the issue of material fact at a trial on the merits. *Anderson,* 477 U.S. at 252–56, 106 S.Ct. at 2512–14; *Valley Liquors,* 822 F.2d at 659. It also must draw every reasonable, but not conceivable, inference in the light most favorable to the non-moving party. *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir.1988); *Valley Liquors,* 822 F.2d at 659. Ultimately, the moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Farries v. Stanadyne/Chicago Division,* 832 F.2d 374, 378 (7th Cir.1987).

*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). For the reasons set forth below, the court finds that the Chapter 7 trustee is entitled to judgment.

■ *The governing law and positions of the parties.* The legal question raised by the parties in this case involves the extent of the debtors' estate. Subject to certain statutory exceptions, which are not relevant here, an estate in bankruptcy consists of property in which the debtor has a legal or equitable interest as of the commencement of the case. 11 U.S.C. § 541(a). At the commencement of the cases here, the debtors had legal and equitable interests in a hotel and a restaurant. As the Chapter 11 trustee operated the hotel and restaurant, the proceeds he generated first became property of the Chapter 11 estate, pursuant to subsections 541(a)(6) and (a)(7) of the Bankruptcy Code, and then became property of the Chapter 7 estate upon the conversion of the cases. *In re Ford*, 61 B.R. 913, 916–17 (Bankr. W.D.Wis.1986). As of the date of the conversion, these proceeds amounted to the $82,-533.19 turned over to the Chapter 7 trustee, and there is no dispute between the parties that legal title to these proceeds is held by the estate. Rather, the question is whether the State of Illinois has an equitable interest in some part of the funds.

■ The Bankruptcy Code certainly recognizes that equitable claims may arise as to estate property; indeed, for equitable interests that arise prepetition, Section 541(d) expressly provides that the estate's claim to the debtor's property is subject to such equitable interests. However, the Code does not define equitable interests or identify the elements needed to establish their existence or extent. This issue, then, must be determined under applicable nonbankruptcy law.[4] Accordingly, Illinois law—in particular the Hotel Operators' Occupation Tax Act (35 ILCS

145/1–145/10 (1992)) and the Use Tax Act (35 ILCS 105/1–105/22 (1992))—determines the existence and extent, if any, of an equitable interest held by the state in the funds at issue.

The Chapter 7 trustee maintains that the estate holds both legal and equitable title to all of the funds received from the operation of the hotel and restaurant, arguing that neither the Hotel Operators' Occupation Tax Act nor the Use Tax Act creates any equitable interest in favor of the state. The Department of Revenue disagrees, contending that a trust arose under these statutes when the Chapter 11 trustee identified an exact dollar amount for the state taxes on the bills of his customers and collected the amount of these taxes from the customers.

■ It is certainly possible for applicable nonbankruptcy law to create a trust in taxes that a debtor collects from third parties. In *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), the Supreme Court enforced just such a trust, created by the Internal Revenue Code. As explained by the Court, 26 U.S.C. § 7501 provides that "[w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special trust for the United States." *Begier*, 496 U.S. at 60, 110 S.Ct. at 2263. However, there is no hint in the opinion that a trust would have applied to taxes collected by a debtor in the absence of a statutory provision to that effect. To the contrary, the court pointed out that under the common law, a trust does not come into existence until "the settlor identifies an ascertainable interest in property to be the trust res," and that the trust imposed by Internal Revenue Code is "radically different from the common-law paradigm." *Begier*, 496 U.S. at 62, 110 S.Ct. at 2265. In the present case, there is no contention by the

---

4. It has long been recognized that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law" and that "state laws are ... suspended only to the extent of actual conflict with the [bankruptcy] system." *Butner v. United States*, 440 U.S. 48, 54 & 54–55 n. 9, 99 S.Ct. 914, 917 & 917–18 n. 9, 59 L.Ed.2d 136 (1979) (applying the

Bankruptcy Act of 1898); *accord UNR Industries, Inc. v. Continental Casualty Co.*, 942 F.2d 1101, 1103–04 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1586, 118 L.Ed.2d 305 (1992) ("State law controls the determination of assets in a bankrupt estate, unless federal interests require a different result.").

state that any common law trust was created here. Rather, the state asserts a "trust fund tax" theory that must be based on the relevant statutes. Accordingly, the statutes imposing the two state taxes at issue here must be examined to determine whether they, like the Internal Revenue Code, create a trust in funds collected or withheld from third parties.

In construing these statutes, the court must apply the rules of statutory construction established by the Illinois Supreme Court. *Cf. In re Barker*, 768 F.2d 191 (7th Cir.1985) (court uses rules of statutory construction set forth by Illinois Supreme Court in analyzing Illinois exemption statute). The Illinois Supreme Court has stated that the primary goal of statutory construction is to ascertain and effectuate the legislature's intent. *Daley v. Datacom Systems Corp.*, 146 Ill.2d 1, 14–15, 165 Ill.Dec. 655, 660–61, 585 N.E.2d 51, 56–57 (1991); *Kraft, Inc. v. Edgar*, 138 Ill.2d 178, 189, 149 Ill.Dec. 286, 291, 561 N.E.2d 656, 661 (1990). To find that intent, the court begins with the statute's language, *In re Marriage of Logston*, 103 Ill.2d 266, 277, 82 Ill.Dec. 633, 637, 469 N.E.2d 167, 171 (1984), construing it with a presumption that words are used with their ordinary meaning, *Daley*, 146 Ill.2d at 15, 165 Ill.Dec. at 661, 585 N.E.2d at 57, and giving consideration to the entire statute, *Castaneda v. Illinois Human Rights Commission*, 132 Ill.2d 304, 318, 138 Ill.Dec. 270, 276–77, 547 N.E.2d 437, 443–44 (1989). Where statutory language is unambiguous, the court does not need to resort to extrinsic aids in construing the statute and must enforce a constitutionally valid statute as enacted. *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill.2d 143, 151, 92 Ill.Dec. 833, 836, 485 N.E.2d 1076, 1079 (1985). Under these principles, the Hotel Operators' Occupation Tax Act and the Use Tax Act do not create a trust in favor of the state.

*The Hotel Operators' Occupation Tax Act.* The Hotel Operators' Occupation Tax Act is one of eleven use and occupation tax statutes in Illinois. The Act imposes a tax in addition to all other Illinois occupation and privilege taxes. 35 ILCS 145/1 (1992). That tax is imposed directly on "persons engaged in the business of renting, leasing or letting rooms in a hotel" and is calculated by applying a prescribed statutory rate to an adjusted balance of the gross rental receipts of hotel operators. 35 ILCS 145/3(a & b) (1992). The Act grants hotel operators the right to "reimburse themselves for their [hotel operators' occupation] tax liability . . . by separately stating such tax as an additional charge" on the bills of hotel customers. 35 ILCS 145/3(e) (1992). However, there is no language in the Act imposing any tax on hotel customers or creating any special trust fund. *See* 35 ILCS 145/1–145/10 (1992).

Both in its actual language and in its overall scheme, the Hotel Operators' Occupation Tax Act cannot be seen as imposing trust status on any funds collected by hotel operators. The absence of any language purporting to impose such a trust is itself dispositive, since "trust fund taxes" have only been found based on express statutory provisions, as in *Begier*. Moreover, Illinois tax law employs express language to create a trust when a trust is intended. *See* 35 ILCS 5/705 (1992) ("Any amount of tax actually deducted and withheld under [Illinois Income Tax Act] shall be a special fund in trust for the [Illinois Department of Revenue].").

But equally compelling is the structure of the tax itself. The theory of "trust fund taxes" (like income tax withholding) is that the tax is imposed on one party (for example, an employee), but is collected and held by another party (for example, the employer). The collecting party can then be seen as holding the collected taxes as trustee, on behalf of the actual taxpayer, for the benefit of the body that imposed the tax. This theory can have no application under the Hotel Operators' Occupation Tax Act, since the tax is imposed directly on hotel operators, not their customers. As if to emphasize that hotel customers are not liable for the tax, the Act makes it clear that the operators are not required to collect the tax from hotel customers, but are merely given a right to "reimburse" themselves by adding the tax to their customers' bills. 35 ILCS 145/3(e) (1992). Thus, the tax is plainly the obligation of the operator, who stands in a debtor-creditor relationship with the state, and not as trustee for another taxpayer.

■ *The Use Tax Act.* The Use Tax Act also does not create a trust fund tax. To understand this conclusion, the Illinois taxation scheme commonly known as the "sales tax" must be examined. In Illinois, the "sales tax" actually consists of two overlapping taxes—defined by the Use Tax Act and the Retailers' Occupation Tax Act (35 ILCS 120/1–120/14 (1992)). *In re Groetken,* 843 F.2d 1007, 1010–11 (7th Cir.1988).

■ The Illinois Retailers' Occupation Tax Act was the initial enactment, originally effective in 1933. 1933 Ill.Laws 924. It imposes a tax on "persons engaged in the business of selling at retail tangible personal property." 35 ILCS 120/2 (1992). The tax operates in a manner parallel to the Hotel Operators' Occupation tax: it is calculated by applying a prescribed statutory rate to the gross receipts from sales of tangible personal property made in the course of a retailer's business, 35 ILCS 120/2–10 (1992), and may be reimbursed through an addition to the bills of retail customers, *see* 35 ILCS 120/2–40 (1992), but it is not subject to any statutory language creating a trust, *see* 35 ILCS 120/1–120/14 (1992), and remains a tax "imposed directly on retailers." *Groetken,* 843 F.2d at 1014. Thus, just as with the Hotel Operators' Occupation Tax, the Retailers' Occupation Tax creates a relationship of debtor-creditor with the affected retailer and the State of Illinois.

■ One problem with the Retailers' Occupation Tax is that it cannot apply to purchases from retailers located outside the state. Thus, an Illinois consumer could avoid paying the tax by shopping outside of Illinois. To address this problem, the Illinois legislature enacted the Use Tax Act in 1955. *Klein Town Builders, Inc. v. Department of Revenue,* 36 Ill.2d 301, 303–04, 222 N.E.2d 482, 484 (1966); *Turner v. Wright,* 11 Ill.2d 161, 163–64, 166–68, 142 N.E.2d 84, 86, 88, *appeal dismissed,* 355 U.S. 65, 78 S.Ct. 140, 2 L.Ed.2d 106 (1957); *Groetken,* 843 F.2d at 1010 (Use Tax Act enacted "to protect [Illinois] retailers from the diversion of business to out-of-state retailers and to prevent evasion of the Occupation Tax"). In order to accomplish this aim, the Use Tax Act imposes a tax on "the privilege of using in [Illinois] tangible personal property ... purchased at

retail from a retailer." *Groetken,* 843 F.2d at 1010; 35 ILCS 105/3 (1992). The Act requires retailers to collect the use tax from retail purchasers by adding the amount of the tax to the selling price of tangible personal property and then separately stating this amount on the purchaser's bill. 35 ILCS 105/3–45 & 105/3a (1992). Thus, in contrast to the Retailers' Occupation Tax, the Use Tax is imposed on the purchaser. *Klein Town Builders,* 36 Ill.2d at 303–04, 222 N.E.2d at 484; *Groetken,* 843 F.2d at 1014; *see* 35 ILCS 105/3–45 & 105/10 (1992). After the retailer collects the use taxes from purchasers, the amount of the use taxes collected becomes a "debt owed by the retailer to [the State of Illinois]." 35 ILCS 105/8 (1992).

■ However, in keeping with its purpose of supplementing collection of the Retailers' Occupation Tax, the Use Tax is not imposed cumulatively. *Groetken,* 843 F.2d at 1011; *Turner,* 11 Ill.2d at 166–68, 142 N.E.2d at 87–88 ("It is intended and provided that one tax, and only one, shall reach the State treasury with respect to each purchase of property for use within the State ...."). Instead, the Use Tax Act expressly relieves a retailer from the debt for payment of the use taxes "if the retailer pays the Occupation Tax." *Groetken,* 843 F.2d at 1011; 35 ILCS 105/8 (1992).

■ With this understanding of the Illinois "sales" tax scheme, it is clear that the Illinois Use Tax Act also does not create a trust fund tax. First, as with the Hotel Operators' Occupation Tax, there is no language in the Use Tax Act that creates any trust, and this absence is dispositive. *See* 35 ILCS 105/1–105/22 (1992). Second, although the Use Tax Act establishes a system of taxation in which a trust might have been created (the retailers collecting a tax owed by their customers), the Act expressly declares that a retailer's resulting obligation is a "debt owed by the retailer to [the State of Illinois]," 35 ILCS 105/8 (1992). Thus, by the plain language of the statute, the retailer

again stands in a debtor-creditor relationship to the state, not in the position of a trustee.[5]

*Judicial interpretation.* There appears to be no published judicial decision squarely addressing the question of whether the Hotel Operators' Occupation Tax Act and the Use Tax Act create trusts in the funds collected by hotel operators and retailers. The Department of Revenue has cited two opinions to support its position that a trust is created under these acts, but neither is on point.

The first of these opinions, *People ex rel. Scott v. Pintozzi*, 50 Ill.2d 115, 277 N.E.2d 844 (1972), dealt primarily with the Retailers' Occupation Tax, the original Illinois "sales tax." In *Pintozzi*, two liquor store retailers collected from retail purchasers, but did not remit to the state, a substantial amount of retailers' occupation taxes. *Pintozzi*, 50 Ill.2d at 116–18, 277 N.E.2d at 846. The opinion reflects findings by the trial court that, in failing to pay the tax, the retailers engaged a number of fraudulent activities, including (1) understating the gross sales receipts of their retail liquor stores on occupation tax returns required to be filed by those stores, and (2) creating sham corporations to shield themselves from personal liability. *Pintozzi*, 50 Ill.2d at 116–118, 128–29, 277 N.E.2d at 846, 852–53. The trial court also found that the retailers forged the name of an individual on the tax certificate for one of the retail liquor stores as well as on various retailers' occupation tax returns required to be filed by that store. *Pintozzi*, 50 Ill.2d at 129–31, 277 N.E.2d at 852–54. The court found that this forgery was "another contrived subterfuge to evade the liability for the tax." *Pintozzi*, 50 Ill.2d at 130, 277 N.E.2d at 853–54.

■ In the context of this fraudulent scheme, the trial court imposed a constructive trust on use tax proceeds collected by the retailers from their customers. *Pintozzi*, 50 Ill.2d at 131–33, 277 N.E.2d at 854–55. A constructive trust is an equitable remedy, generally imposed as a result of fraud or breach of fiduciary duty. *Suttles v. Vogel*, 126 Ill.2d 186, 193, 127 Ill.Dec. 819, 822–23, 533 N.E.2d 901, 904–05 (1988).[6] The *Pintozzi* decision does not discuss why a constructive trust was imposed (only the extent of the trust is addressed), but it would appear that the trust was a remedy for the fraud of the retailers. Certainly *Pintozzi* made no determination that the Use Tax Act itself gives rise to any trust obligations. Hence, *Pintozzi* would have no application to the present case, where there have been neither allegations nor proof of any fraud by the Chapter 11 trustee.

The second decision cited by the Department of Revenue is *In re Rosenow*, 715 F.2d 277 (7th Cir.1983). *Rosenow* dealt with the Illinois Use Tax Act. The question before the court was whether tax obligations under that Act are nondischargeable under section 523(a)(1)(A) of the Bankruptcy Code. Section 523(a)(1)(A) excepts from discharge debts for a tax "of the kind ... specified in section ... 507(a)(7)," and Section 507(a)(7)(C) applies to claims for "a tax required to be collected or withheld and for which the debtor is liable in whatever capaci-

---

5. The Illinois legislature appears to have established the duty of Illinois retailers to remit payment under the Use Tax Act as a debt, rather than as a trust obligation, so that this duty could be offset by payment of the retailers' direct (debt) obligation under the Retailers' Occupation Tax. "[T]he use tax collected by the retailer does not constitute a debt owed by him to the State when he 'is relieved of the duty of remitting such tax to the Department [of Revenue] by virtue of his being required to pay the tax imposed by the Retailers' Occupation Tax Act....' " *Turner*, 11 Ill.2d at 166–68, 142 N.E.2d at 88, quoting Section 8 of the Use Tax Act, 35 ILCS 105/8 (1992).

6. *Suttles* discusses the law of constructive trusts as follows:

> A constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property ... because it would be inequitable for that party to retain possession of the property.
> ....
> A constructive trust is generally imposed in two situations: first, where actual or constructive fraud is considered as equitable grounds for raising the trust and, second, where there is a fiduciary duty and a subsequent breach of that duty.... Some form of wrongdoing is a prerequisite to the imposition of a constructive trust.

126 Ill.2d at 193, 127 Ill.Dec. at 822–23, 533 N.E.2d at 904–05.

ty." *Rosenow,* 715 F.2d at 279 n. 2.[7] The debtor argued that Illinois use taxes were not within the meaning of Section 507(a)(7)(C) since the legislative history of that section only referred to traditional "trust fund taxes" such as the employee's share of social security taxes and the withheld amount of an employee's federal income taxes. *Rosenow,* 715 F.2d at 279. The Court of Appeals rejected this argument, holding that the plain language of Section C is not confined to "trust fund taxes," *Rosenow,* 715 F.2d at 279, and that Illinois use taxes fall within the coverage of Section 507(a)(7)(C) as taxes (1) "required to be collected" and (2) "for which the debtor was liable," *Rosenow,* 715 F.2d at 280–81. The court noted the "constructive trust" holding of the Illinois Supreme Court in *Pintozzi* only to emphasize that the retailer is liable for nonpayment of the use taxes, therefore satisfying the second element for inclusion of the tax within Section 507(a)(7)(C). *Rosenow,* 715 F.2d at 281. Thus, far from holding that the use taxes constituted trust fund taxes, the court actually held that they were within the coverage of Section 507(a)(7)(C) despite the fact that they were not trust fund taxes.

### Conclusion

For the reasons set forth above, the funds collected by the Chapter 11 trustee pursuant to the Illinois Hotel Operators' Occupation Tax Act and the Illinois Use Tax Act were not funds held in trust, but rather were funds held by the trustee as a debt to State of Illinois. Accordingly, the State of Illinois acquired no equitable interest in these funds, but rather was an administrative creditor in the Chapter 11 cases with respect to these taxes. The summary judgment motion of the Chapter 7 trustee, seeking a declaration to this effect, is granted; the summary judgment motion of the Department of Revenue is denied. A separate judgment order will be entered in conformity with this opinion.

---

7. At the time of the *Rosenow* decision, what is now Section 507(a)(7) was codified as Section 507(a)(6).